512 P.2d 1245

SIERRA LIFE INSURANCE COMPANY,
an Idaho corporation, Plaintiff-Appellee
and Cross-Appellant,

v.

FIRST NATIONAL LIFE INSURANCE
COMPANY, an Alabama corporation, De-
fendant-Appellant and Cross-Appellee.

No. 9529.

Supreme Court of New Mexico.

Aug. 3, 1973.

410

Jones, Gallegos, Snead & Wertheim, J.
E. Gallegos, M. J. Rodriguez, Santa Fe,
for appellant.

Standley, Witt & Quinn, Fred M. Standley, Santa Fe, Travis & Jordan, A. Bob Jordan, Oklahoma City, Okl., for appellee.

## OPINION

MARTINEZ, Justice.

This is an appeal from an action brought by Sierra Life Insurance Company, an Idaho corporation, for damages arising from an alleged breach of contract by First National Life Insurance Company, an Alabama corporation, or in the alternative for specific performance and damages for the past failure to perform the terms of a contract. The action was brought in the District Court of Santa Fe County and was tried without a jury. Judgment was entered in favor of the plaintiff in the sum of $46,053.99, plus costs. Defendant appeals from the judgment and plaintiff cross-appeals on the question of the proper application of the measure of damages.

Appellee is the successor in interest pursuant to a statutory merger in 1964 with New Mexico Life Insurance Company, (New Mexico Life), a New Mexico corporation. Appellant is the successor in interest pursuant to a statutory merger in 1967 with First National Life Insurance Company, (First National Life), an Arizona corporation. In 1962, New Mexico Life and First National Life entered into a merger agreement which prohibited First National Life from selling insurance contracts on the lives of New Mexico Life policyholders pending approval of the merger. The merger was delayed. New Mexico Life and First National Life amended the merger agreement by concurrent corporate resolutions allowing First National Life to sell life insurance policies to the policyholders of New Mexico Life, but with the resolutions providing that " * * * in the event the said merger is not consummated, that FIRST NATIONAL LIFE INSURANCE COMPANY shall forthwith cede back, by treaty of bulk reinsurance, all such life insurance contracts written with the present policyholders of NEW MEXICO LIFE INSURANCE COMPANY." After April 1, 1963, First National Life sold life insurance policies to persons who were policyholders of New Mexico Life.

The proposed merger agreement was rejected by the Director of Insurance of the State of Arizona. The merger agreement was therefore abandoned by New Mexico Life and First National Life. After the merger failed, neither First National Life nor its successor, the appellant, transferred back any life insurance policies written on New Mexico Life policyholders to New Mexico Life or its successor, the appellee.

A basic issue of the appeal is whether the concurrent corporate resolutions form a contract, or are merely an agreement to contract in the future. Appellant argues that the term of the resolution, "cede back, by treaty of bulk reinsurance," requires that the parties must in the future negotiate a "treaty." Appellant further argues that a good faith attempt was made by the parties to negotiate such a treaty, but the parties failed to agree on its terms, thereby excusing performance by First National Life. In this connection, the appellant asserts that the trial court erred in admitting parol evidence to interpret the terms of the "agreement to agree," or the contract if one in fact existed.

Much testimony explaining the technical terms of the life insurance business was admitted into evidence. Such testimony was not admitted for the purpose of varying or altering the terms of a contract. Parol evidence may be received to explain technical terms used in a written contract, and is always admissible to define and explain the meaning of words or phrases in a written instrument which are technical or where a word or phrase is used in a peculiar sense that is applicable to a particular industry or trade. Hartford Steam Boil. Insp. I. Co. v. Schwartzman Pack. Co., 423 F.2d 1170 (10th Cir. 1970). See also 30 Am.Jur.2d Evidence § 1075; 32A C.J.S. Evidence § 962.

In the case before us, certain terms of the contract in question are peculiar to the life insurance industry and have not

been previously interpreted by this Court. Several of the expert witnesses that testified in this action gave definitions to the technical words and phrases of the contract and to terms used. The key phrase to the contract was the requirement for First National Life to "cede back, by treaty of bulk reinsurance," certain life insurance contracts to New Mexico Life. "Cede" in the insurance industry was interpreted to mean to "transfer" or "assign." A "reinsurance treaty" is an instrument by which an insurance company passes all or part of the insurance risk from itself to another. In the life insurance industry, "treaty of bulk reinsurance" is basically a contract of conveyance and assumption, resulting in substituted personal insurance and is not a reinsurance treaty in the classical sense. See 13 Appleman, Insurance Law and Practice, § 7741, at 506 et seq., and § 7743, at 517 et seq. Appleman defines pure reinsurance as:

"* * * the ceding by one insurance company to another of all or a portion of its risks for a stipulated portion of the premium, in which the liability of the reinsurer is solely. to the reinsured, which is the ceding company, and in which contract the ceding company retains all contact with the original insured, and handles all matters prior to and subsequent to loss." Section 7681, at 434.

■ There is substantial evidence, which finds support in the texts, that under a treaty of bulk reinsurance, the ceding (insuring) company transfers and assigns to the receiving (reinsuring) company the entire risk of the policy contracts being transferred, together with the statutory reserves of those policies. All policy records and files are also delivered to the reinsuring company which is thereafter totally responsible for all aspects of the policy contracts pertaining to the policies ceded. The reinsuring company shall thereafter be entitled to receive all premium income and profits flowing from the policies reinsured, and shall be the insurer of policyholders, indemnifying the original insurer from all future responsibility or liability concerning the policies. See 13 Appleman, Insurance Law and Practice, § 7743, at 517 et seq.

■ The trial court found that the concurrent corporate resolutions created a contract. We find in the record substantial evidence to support this finding and if there is substantial evidence to support a trial court's findings such findings will not be disturbed on appeal. Trujillo v. Romero, 82 N.M. 301, 481 P.2d 89 (1971). The trial court correctly found that First National Life had an obligation to transfer to New Mexico Life immediately after the merger failed the life insurance policy contracts written on the policyholders of New Mexico Life at the date of the contract. The merger attempt was totally abandoned in December, 1963. Appellant admits that it did not cede the policies in question. The remaining questions before this Court concern the proper identification of the policies, the correct measure of damages and certain legal defenses raised by the appellant.

■ The trial court found that nearly one year after the contract obligation arose, First National Life had furnished the appellee with a computer print-out which listed the policies in question. Appellant generally attacks this print-out as being hearsay evidence and in violation of the best evidence rule. It appears from the evidence that an officer of First National Life mailed a computer listing of certain policies to the appellee with a letter that stated that the enclosed print-out was a listing of "the policies with which we are concerned in our transfer of business from FIRST NATIONAL LIFE to SIERRA LIFE." The defendant admitted the authenticity of the letter and stipulated its admission into evidence. A former officer of the appellee testified that the computer print-out was the listing of policies referred to in the letter and received by the appellee with the letter from First National Life, such evidence violates neither the best evidence rule nor the hearsay evidence

rule. This is evidence which substantially supports the trial court's findings of fact and will not be disturbed on appeal.

■ Appellant further asserts that the appellee's conduct precluded the consummation of a treaty of bulk reinsurance. This attack is also related to the appellant's contention that the concurrent corporate resolutions were merely an "agreement to agree" in the future. The trial court admitted much evidence concerning this point, and entered findings that the plaintiff's conduct was not such as to preclude the defendant-appellant from ceding the policies listed on the computer printout, but rather that First National Life did not want to cede the policies for reasons of its own.

In Samora v. Bradford, 81 N.M. 205, 207, 465 P.2d 88, 90 (1970), the court stated:

"On appeal, the evidence must be viewed in its most favorable light in support of the trial court's findings. If the evidence, including the reasonable inferences deducible therefrom, when so viewed, supports the trial court's findings, all contrary evidence and inferences must be disregarded." (Citations Omitted).

"An appellate court does not pass upon the weight of the evidence or the credibility of the witnesses." (Citations Omitted).

"Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate support for a conclusion." (Citations Omitted).

There is substantial evidence in the record showing that a further agreement was not required to cede the policies, with a treaty of bulk reinsurance being well understood in the life insurance industry as it is defined in this opinion.

■ It should be noted here that the consideration paid by a reinsuring company to a ceding company for the value of a group of policies to be transferred by a treaty of bulk reinsurance is generally a negotiated amount to the extent that a treaty of bulk reinsurance is a negotiated contract. In this case the necessary consideration supporting the contract was the mutual promises contained in the concurrent corporate resolutions and the underlying merger agreement. The refusal to make contrary findings, as urged by the appellant, is not error. See McCauley v. Ray, 80 N.M. 171, 453 P.2d 192 (1968).

■ In another point, the appellant asserts that the claims of Sierra Life Insurance Company are barred by the doctrine of laches. The trial court found that first New Mexico Life and then the plaintiff, Sierra Life, made demands on First National Life to cede the policies in question. Such demands commenced after December 31, 1963, and continued to the filing of this action in November 1968. We find substantial evidence in the record to support this finding. It is also shown that on at least two occasions prior to the institution of this litigation the plaintiff started to bring suit, only to be assured by one or more officers of First National Life that the matter would be worked out if the plaintiff would forbear. It is clear to this Court that the plaintiff was not guilty of laches.

■ Appellant also raises the point that this action was barred by the statute of limitations. It is asserted that the Arizona statute of limitations should apply, it being a four-year statute. The trial court properly ruled that under New Mexico law statutes of limitations are procedural and that the law of the forum governs matters of procedure. See Slade v. Slade, 81 N.M. 462, 468 P.2d 627 (1970). Therefore, we hold that this action was clearly brought within the six-year New Mexico statute of limitations governing suits on written instruments. Section 23-1-3, N.M.S.A. 1953.

■ Appellant also attacked the appellee's notice of cross-appeal as not being

timely filed. The record shows that First National Life mailed to Sierra Life its notice of appeal on March 25, 1971. If received in due course counsel for the appellee received the notice on March 26, 1971. Rule 7 of the Supreme Court Rules, Section 21–2–1(7), N.M.S.A., 1953, provides that the appellees may have a cross-appeal if application therefor (by notice of cross-appeal) is filed within fifteen days after such service of the notice of appeal. Fifteen days after such service expired on Saturday, April 10, 1971, with the appellee's notice of its cross-appeal filed on the next business day, Monday, April 12, 1971. See Daughtrey v. Carpenter, 82 N.M. 173, 477 P.2d 807 (1970).

■ We now turn to the question of the proper measure of damages to appellee occasioned by the failure of First National Life to cede by treaty of bulk reinsurance the policies it was required to transfer to New Mexico Life. The trial court held the damage suffered by the plaintiff to be the fair market value of the life insurance policy contracts that should have been assigned as of December 31, 1963. We agree. First National Life's failure to cede the group of policies was an effective conversion of the policies.

Under the evidence, the trial court had only two valid alternatives: to apply an industry standard rule of thumb used in evaluating the commercial worth of such a group of policies, or to accept the value determined from an asset share study introduced by Sierra Life which was made by an actuarial firm that computed the fair market value of the policies in question. The defendant put into evidence no valuation of the policies listed on the computer print-out furnished by First National Life to the plaintiff-appellee. Instead they placed a value on only a part of the policies, those claimed by the defendant to have been policies directly converted from policies of New Mexico Life. The trial court adopted as the value of the policies that amount determined by applying the standard rule of thumb often used in the life insurance business in establishing the fair market value of a block of life insurance policies for sale between insurance companies.

■ An expert witness, Rudy A. Ortiz, formerly an examiner for the New Mexico Superintendent of Insurance and presently an officer of an insurance company not a party to these proceedings, testified that while several rules of thumb existed for valuing life insurance policies, one such rule of thumb for valuing whole life policies is one and one-half (1½) times the annual premium of the policies being valued. A whole life policy essentially continues for the whole of the insured's life and provides for the payment of the amount insured at the insured's death. The term whole life insurance is synonymous with the term ordinary life insurance or straight life insurance. There is substantial evidence in the record that the policies in question are whole life policies, not term, group life, accidental death, health and accident or credit life type policies that would involve a different standard rule of thumb in determining market value. Further, this valuation method was never attacked in the record. Therefore, this Court must conclude that the testimony of Mr. Ortiz was certainly relevant evidence, and that a reasonable mind could accept it as adequate support for the trial court's questioned finding. Accordingly, this finding of fact will not be disturbed on appeal. See Trujillo v. Romero, supra.

■ The trial court as the trier of fact had two measures of damages before it. It chose to apply the industry rule of thumb testified to by Mr. Ortiz. This Court will not attempt to second guess the trial court's determination of the proper measure to be applied for damages if the trial court had several alternatives before it supported by substantial evidence.

■ Both the appellant and appellee attack the trial court's conclusions of law

pertaining to the application of the measure of damages determined proper under the findings of fact. Both parties assert that neither the law nor the record uphold the conclusions stated. This Court disagrees.

The actual finding made by the trial court upon which most of the arguments of the parties has focused is as follows:

> "The insurance industry, as a standard or rule of thumb, in establishing a fair market value of a block of life insurance policies for sale between insurance companies, has established the ratio of 1½ times the annual premium income. Underwriting practices and types of policies sold by the selling company will vary this standard."

Sierra Life, in a cross-appeal, contends that the court, having determined the correct measure of damages, then misapplied it in arriving at the amount of its judgment. It claims that the court should have simply taken the gross annual premium ($61,571.00), multiplied it by 1½, and entered judgment for the resulting figure ($92,356.50). This argument disregards the second sentence of the quoted finding, coupled with various facts found by the trial court (several of which were designated as conclusions of law) relative to the underwriting practices employed in connection with the policies in question, the policy lapse ratio and their salability and value. The effect of these findings is to diminish the fair market value of the policies in question, and they account for the trial court's entry of judgment in the sum of $46,053.99.

In our opinion, the findings of fact made by the trial court, including those we have mentioned which were labeled as conclusions of law, find support in the evidence and in turn support the judgment.

Judgment is affirmed.

It is so ordered.

OMAN and STEPHENSON, JJ., concur.