1997-NMCA-103

946 P.2d 1130

**In the Matter of the ESTATE OF
Vernon Dana GILMORE,
Deceased.**

**Connie GILMORE, Natural Mother and
Guardian of Tracy Gilmore, a minor,
and Jason Gilmore, Petitioners–Appellees,**

v.

**Diana GILMORE, Individually and
as Personal Representative,
Respondent–Appellant.**

No. 17775.

Court of Appeals of New Mexico.

Sept. 12, 1997.

120

Wayne E. Bingham, M. Dwight Hurst, Crider, Calvert & Bingham, P.C., Albuquerque, for Petitioners–Appellees.

Peter J. Broullire III, Albuquerque, for Respondent–Appellant.

## OPINION

HARTZ, Chief Judge.

(1) This appeal requires us to determine which state's law governs the distribution of the proceeds of a wrongful-death claim when the state where the tort and death occurred (Texas) is not the domicile of the decedent or of any of the potential beneficiaries of the claim. We hold that, absent compelling circumstances, the governing law is that of the state where the tort and death occurred. No such compelling circumstances exist here, because the applicable law is essentially the same as that of the states of domicile of three of the four potential beneficiaries. Because the district court erred in applying New Mexico law, we reverse and remand with instructions to distribute the proceeds in accordance with the law of Texas.

## I. BACKGROUND

(2) Vernon Dana Gilmore (the Decedent) was killed on a Texas highway on April 16, 1995 when his motorcycle collided with a motor vehicle driven by a Texan (the Tortfeasor). At the time of his death, Decedent and his wife, Diane Gilmore, were domiciled in New Mexico. Other than Diane, his survivors were his two children by a former marriage—Tracy and Jason (the Children)—who have resided in the State of Washington since their parents were divorced in 1985, and his mother, Helen Morland (Decedent's Mother), who is a resident of Idaho.

(3) Diane was appointed personal representative of Decedent's estate by the Bernalillo County District Court. In that capacity she collected $110,000 for his wrongful death—$100,000 paid on Tortfeasor's liability policy and $10,000 paid on Decedent's uninsured-motorist policy. The Children petitioned the district court to distribute the proceeds in accordance with the New Mexico Wrongful Death Act, NMSA 1978, § 41–2–3 (Repl.Pamp.1996). Diane contended that Texas law should govern. The parties moved for summary judgment. The district court granted the Children's motion and denied Diane's. Diane appeals.

(4) The damages recoverable under the New Mexico statute are based on the "worth of the life of the decedent," *Stang v. Hertz Corp.*, 81 N.M. 348, 350, 467 P.2d 14, 16 (1970), even if there are no surviving relatives. *Id.* The recovery, however, is not an asset of the Decedent's estate. *See Baca v. Baca*, 71 N.M. 468, 473–74, 379 P.2d 765, 768–69 (1963); *cf.* § 41–2–3 (if no statutory beneficiaries, proceeds of wrongful-death judgment "shall be disposed of in the manner authorized by law for the disposition of the personal property of deceased persons"). Under Section 41–2–3 the statutory beneficiaries of the wrongful-death claim are Diane and the Children, who would each receive one-third of the proceeds.

(5) Diane contends that the insurance proceeds should be distributed in accordance with the Texas wrongful-death statute. Under Texas law the statutory beneficiaries in a wrongful-death claim are "the surviving spouse, children, and parents of the deceased." Tex.Civ.Prac. & Rem.Code Ann. § 71.004(a) (West 1997). The amount of recovery is based on the loss suffered by each of the statutory beneficiaries, with the judgment to be apportioned accordingly. *See id.* § 71.010(b) (distribute proceeds "in shares as found by the jury in its verdict"); *St. Louis, A. & T. Ry. Co. v. Johnston*, 78 Tex. 536, 15 S.W. 104, 106 (1890), *overruled on other grounds by Sanchez v. Schindler*, 651 S.W.2d 249, 251 (Tex.1983); *Missouri Pac. Ry. Co. v. Henry*, 75 Tex. 220, 12 S.W. 828, 829 (1889), *overruled on other grounds by Sanchez v. Schindler*, 651 S.W.2d 249, 251 (Tex.1983). In particular, a statutory beneficiary who has not suffered a compensable loss as a result of the death is not entitled to any recovery. *See, e.g., Johnston.*

(6) We also note the laws of the other potentially relevant states. The statutory beneficiaries under Washington law would be Diane and the Children. *See* Wash.Rev.Code Ann. § 4.20.020 (West 1988). The jury awards damages as "may to them seem just." *Id.* As we understand Washington law, the amount of recovery is based on the sum of the losses suffered by each of the statutory beneficiaries, *see Kramer v. Portland–Seattle Auto Freight*, 43 Wash.2d 386, 261 P.2d 692 (1953), with the recovery to be apportioned among the beneficiaries accordingly, *see Hansen v. Stimson Mill Co.*, 195 Wash. 621, 81 P.2d 855, 856 (1938), *overruled on other grounds by Wood v. Dunlop*, 83 Wash.2d 719, 521 P.2d 1177, 1180 (1974). Under Idaho law the statutory beneficiaries would be Diane, the Children, and Decedent's Mother. *See* Idaho Code § 5–311 (1990). The statute provides for damages "as under all the circumstances of the case as may be just." *Id.* The statute provides no formula for apportionment among the statutory beneficiaries; apparently the share that each should receive is based upon the loss to that particular beneficiary. *See Hogan v. Hermann*, 101 Idaho 893, 623 P.2d 900 (1980) (settlement of defendant with one statutory beneficiary does not preclude suit by other statutory beneficiaries); *Hepp v. Ader*, 64 Idaho 240, 130 P.2d 859 (1942) (separate verdicts for each statutory beneficiary).

(7) Thus, it appears that Texas, Washington, and Idaho are alike in providing recovery to each statutory beneficiary in accordance with the loss to that beneficiary. Diane and the Children are statutory beneficiaries under the law of all three states, while Decedent's Mother is a statutory beneficiary only under the laws of Texas and Idaho. Diane apparently prefers a Texas-type statute because she believes that under that law she would receive more than one-third of the insurance proceeds, which is the portion specifically provided by the New Mexico statute.

## II.  DISCUSSION

(8) There are no disputed material facts. Our review of the summary judgment is limited to whether the law was correctly applied to the facts. *See General Elec. Credit Corp. v. Tidenberg*, 78 N.M. 59, 61, 428 P.2d 33, 35 (1967); Rule 1–056(C) NMRA 1997.

■■■ (9) A claim for wrongful death is a tort cause of action. In determining which state's law to apply in a tort action, New Mexico "generally follows the doctrine of *lex loci delicti*," *Torres v. State*, 119 N.M. 609, 613, 894 P.2d 386, 390 (1995), meaning "[t]he law of the place where the crime or wrong took place." *Black's Law Dictionary* 630 (abr. 6th ed.1991). We have said that the "place of the wrong is the location of the last act necessary to complete the injury." *Wittkowski v. State Corrections Dep't*, 103 N.M. 526, 528, 710 P.2d 93, 95 (Ct.App.1985), *overruled on other grounds by Silva v. State*, 106 N.M. 472, 477, 745 P.2d 380, 385 (1987). Accordingly, in *First National Bank v. Benson*, 89 N.M. 481, 553 P.2d 1288 (Ct.App. 1976), we held that the New Mexico Wrongful Death Act applied to a claim arising from the death of Missouri residents in an airplane crash in New Mexico.

■■■ (10) To circumvent this authority, the Children contend that the place-of-the-wrong rule does not extend to procedural rules and that the law governing the distribution of the insurance proceeds is a matter of procedure rather than substance. The first component of their argument is supported by precedent. New Mexico opinions have said that "the law of the forum governs matters of procedure."

*Sierra Life Ins. Co. v. First Nat'l Life Ins. Co.*, 85 N.M. 409, 413, 512 P.2d 1245, 1249 (1973). *Accord Satterwhite v. Stolz*, 79 N.M. 320, 325, 442 P.2d 810, 815 (Ct.App.1968); *see* Restatement of Conflict of Laws § 585 (1934) ("All matters of procedure are governed by the law of the forum.") (Restatement First).

(11) Before addressing the second component of the Children's argument (that is, whether the law governing the distribution of proceeds is "procedural"), a few comments are in order about the legitimacy of the substance/procedure dichotomy in conflict-of-laws jurisprudence. We are mindful of the powerful criticisms of the use of that dichotomy. *See Sun Oil Co. v. Wortman*, 486 U.S. 717, 726–28, 108 S.Ct. 2117, 2123–25, 100 L.Ed.2d 743 (1988); *Nez v. Forney*, 109 N.M. 161, 164, 783 P.2d 471, 474 (1989) (Montgomery, J., specially concurring); Restatement (Second) of Conflict of Laws § 122 cmt. b (1971) (Restatement Second). These criticisms, however, are not directed at the correctness of the results in the great bulk of decisions that rely on the distinction between "substance" and "procedure." Rather, they focus on the unthinking use of this terminology, which appears in several areas of the law besides conflict of laws. The problems arise when a perfectly sound decision in one area of the law classifies a matter as "substantive" or "procedural" and then a court considering another area of the law blindly applies the precedent despite the different considerations that should come into play. *See* Restatement Second § 122 cmt. b (noting that the Restatement avoids classifying issues as procedural or substantive and that its provisions "face directly the question whether the forum's rule should be applied"). The line between substance and procedure is not always clear, *see Ammerman v. Hubbard Broad.*, 89 N.M. 307, 310, 551 P.2d 1354, 1357 (1976), and the judgment about where to draw the line in a particular case may depend on the reasons for drawing the line, *see Sun Oil Co.*, 486 U.S. at 726, 108 S.Ct. at 2124 ("Except at the extremes, the terms 'substance' and 'procedure' precisely describe very little except a dichotomy, and what they mean in a particular context is largely deter-

mined by the purposes for which the dichotomy is drawn.").

(12) Thus, the criticism cautions us to use words with care, but it does not suggest abandonment of the core of the doctrine that "matters of procedure are governed by the law of the forum." Restatement First § 585. That core is expressed in Restatement Second Section 122, as follows: "A court usually applies its own local law rules prescribing how litigation shall be conducted even when it applies the local law rules of another state to resolve other issues in the case." The local law rules encompassed by Section 122 are essentially the same as those described as procedural in a well-known formulation by the United States Supreme Court in a different context. "[P]rocedure [is] the judicial process for enforcing rights and duties recognized by substantive law and for justly administering remedy and redress for disregard or infraction of them." *Sibbach v. Wilson & Co.*, 312 U.S. 1, 14, 61 S.Ct. 422, 426, 85 L.Ed. 479 (1941) (Federal Rule of Civil Procedure that can compel plaintiff to submit to medical examination is procedural rule that can be applied in diversity action).

(13) For the above reasons, it is appropriate to continue to use the "substance/procedure" terminology of our precedents. To avoid the pitfalls of that usage, however, we must take care to keep in mind the rationale for applying the forum's "procedural" rules. Therefore, we set forth at some length the explanation provided by the Restatement Second for leaving to the forum state the rules for conducting litigation:

Each state has local law rules prescribing the procedure by which controversies are brought into its courts and by which the trial of these controversies is conducted. These rules for conducting lawsuits and administering the courts' processes vary from state to state. The forum has compelling reasons for applying its own rules to decide such issues even if the case has foreign contacts and even if many issues in the case will be decided by reference to the local law of another state. The forum is more concerned with how its judicial machinery functions and how its court processes are administered than is any other state. Also, in matters of judicial administration, it would often be disruptive or difficult for the forum to apply the local law rules of another state. The difficulties involved in doing so would not be repaid by a furtherance of the values that the application of another state's local law is designed to promote.

Parties do not usually give thought to matters of judicial administration before they enter into legal transactions. They do not usually place reliance on the applicability of the rules of a particular state to issues that would arise only if litigation should become necessary. Accordingly, the parties have no expectations as to such eventualities, and there is no danger of unfairly disappointing their hopes by applying the forum's rules in such matters.

Enormous burdens are avoided when a court applies its own rules, rather than the rules of another state, to issues relating to judicial administration, such as the proper form of action, service of process, pleading, rules of discovery, mode of trial and execution and costs. Furthermore, the burdens the court spares itself would have been wasted effort in most instances, because usually the decision in the case would not be altered by applying the other state's rules of judicial administration. Even if the outcome would be altered, however, the forum will usually apply its own rule if the issue primarily concerns judicial administration. The statute of limitations is a striking example of such an issue . . . .

Restatement Second § 122 cmt. a.

(14) From this perspective we cannot characterize the allocation of insurance proceeds as a "procedural" matter. The allocation does not implicate how the courts are administered. We are not concerned here with how court officials go about executing a judgment but with who benefits from the judgment.

(15) The Children cite four New Mexico decisions in support of their argument, but none is persuasive. In *Satterwhite*, 79 N.M. at 325, 442 P.2d at 815, we held that a Texas rule of civil procedure governing third-party practice did not apply in New Mexico courts.

In *Church v. Church*, 96 N.M. 388, 391, 630 P.2d 1243, 1246 (Ct.App.1981), we held that our Rule of Civil Procedure 12(b)(6) authorized a motion to dismiss for failure to state a claim upon which relief can be granted, regardless of which state's substantive law applied. *McKenzie v. K.S.N. Co.*, 79 N.M. 314, 315, 442 P.2d 804, 805 (Ct.App.1968), did not purport to resolve a conflict-of-laws issue. It merely held that a New Mexico probate court could grant a letter of administration for enforcement of a wrongful-death claim arising out of an airplane crash in Mexico. We described the issue as whether the claim was "sufficient for the issuance of letters of administration." *Id.* (italics omitted). Likewise, *Henkel v. Hood*, 49 N.M. 45, 156 P.2d 790 (1945), was not a conflict-of-laws opinion. The holding of our Supreme Court was that a "community administrator," appointed by a Texas court to administer the community estate of a decedent, was a suitable "personal representative" to bring a wrongful-death action under the New Mexico statute. *Id.*

■ (16) None of the above cases can support the proposition that a law governing how much money goes to each beneficiary is merely a "procedural" matter. The Children have cited no authority, nor have we found any, that so describes the apportionment of the proceeds of a cause of action for wrongful death. The Restatement Second illustrates, and limits, the principle set forth in Section 122 by discussing a number of specific examples of "local law rules prescribing how litigation shall be conducted," and none has anything to do with how to divide the proceeds of a judgment. *See* Restatement Second ch. 6. The comparable provisions of the Restatement First also do not support the Children's contention. *See* Restatement First ch. 12. We conclude that the law governing how to apportion the proceeds among beneficiaries is a matter of substantive law not necessarily governed by the law of the forum state. *Cf. Walters v. Rockwell Int'l Corp.*, 559 F.Supp. 47 (E.D.Va.1983) (applies law of forum state to "remedial" issue of distribution of proceeds of claim for wrongful death).

■ (17) This conclusion, however, does not end the inquiry. The place-of-the-wrong rule has not been applied rigidly by our Supreme Court. In *Torres*, 119 N.M. at 613, 894 P.2d at 390, the Court said that it would not apply the rule "if such application would violate New Mexico public policy." In that wrongful-death case the plaintiffs claimed that the negligence of the Albuquerque Police Department was a proximate cause of the murder in California of the plaintiffs' decedents. The Supreme Court held that "'[p]ublic policy dictates that New Mexico law determine the existence of duties and immunities on the part of New Mexico officials,'" *id.*, (quoting *Wittkowski*, 103 N.M. at 529, 710 P.2d at 96) so that New Mexico law governed. *But cf.* Restatement Second § 156 (the law governing "whether the actor's conduct was tortious ... will usually be the local law of the state where the injury occurred").

■ (18) Thus, policy considerations may override the place-of-the-wrong rule. But to say that policy is a factor is not to say that New Mexico policy always governs in a New Mexico court. If so, New Mexico courts would always apply New Mexico law, because New Mexico law represents New Mexico policy. Such a practice would render toothless the place-of-the-wrong rule. *See Reagan v. McGee Drilling Corp.*, 123 N.M. 68, 70, 933 P.2d 867, 869 (Ct.App.), *cert. denied*, 122 N.M. 808, 932 P.2d 498 (1997).

(19) We understand *Torres* to be saying something rather more limited in scope. *Torres* accepts the general rule that New Mexico courts will apply the tort law of the state where the wrong occurred. This makes sound policy sense, because the state where the wrong occurred ordinarily is the state with the greatest interest in having its law apply. This is particularly true when both the wrongful conduct and the injury occur in one state. In certain circumstances, however, another state may have a more significant interest in having its law apply. For example, when the misconduct and the injury are in separate states, there may be reasons for the law of the state of the misconduct to govern the question of the actor's liability. Thus, in *Torres* our Supreme Court held it to be a matter of public policy that the Albuquerque Police Department be subjected to liability for negligence regardless of the

location of the resulting injury or the domicile of the victim. The Supreme Court applied New Mexico law regarding the liability in tort of the police officers not because the case was being litigated in a New Mexico court, and not even just because the immunity vel non of police officers· is an important policy matter. The determining factor was that the police officers involved were New Mexico officers acting in New Mexico, so that New Mexico had a particular interest in the standard of conduct imposed on the officers. In other words, New Mexico law governed because (1) the policy issue was an important one and (2) there were important reasons why New Mexico's policy (as opposed to that of another state) should prevail.

(20) The approach, if not the result, in *Torres* is consistent with the Restatement Second. Section 145 states:

(1) The rights and liabilities of the parties with respect to an issue in tort are determined by the local law of the state which, with respect to that issue, has the most significant relationship to the occurrence and the parties under the principles stated in § 6.[1]

(2) Contacts to be taken into account in applying the principles of § 6 to determine the law applicable to an issue include:

(a) the place where the injury occurred,

(b) the place where the conduct causing the injury occurred,

(c) the domicil, residence, nationality, place of incorporation and place of business of the parties, and

(d) the place where the relationship, if any, between the parties is centered.

These contacts are to be evaluated according to their relative importance with respect to the particular issue.

On the other hand, we must recognize that *Torres* did not adopt Section 145. Although our Supreme Court has followed the Restatement Second in some respects—principally, with regard to forum non conveniens, *see, e.g., Buckner v. Buckner,* 95 N.M. 337, 339, 622 P.2d 242, 244 (1981), and jurisdiction, *see, e.g., Worland v. Worland,* 89 N.M. 291, 293, 295, 551 P.2d 981, 983, 985 (1976)—we are well aware that it has not embraced the Restatement Second with respect to choice-of-law issues in either tort or contract. The furthest it has gone is to give some lip service to Restatement Second in a contract choice-of-law case, in which it found that the result it reached would have been the same under the Restatement Second approach. *See State Farm Mut. Ins. Co. v. Conyers,* 109 N.M. 243, 246–48, 784 P.2d 986, 989–91 (1989).

■■■ (21) We perceive New Mexico conflict-of-law doctrine as reflecting a desire for the greater certainty presumably provided by more traditional approaches to conflict-of-laws problems, tempered by recognition that important policy considerations cannot be ignored. *See id.* at 247, 784 P.2d at 990; *Benson,* 89 N.M. at 482–83, 553 P.2d at 1289–90. Therefore, we begin with a strong presumption in favor of application of the place-of-the-wrong rule, but we will not close our eyes to compelling policy arguments for departure from the general rule in specific circumstances.

(22) How does this approach apply to the present case? To begin with, the arguments in favor of applying Texas tort law are rather compelling. The misconduct and the injury occurred in Texas, and the Tortfeasor was domiciled in Texas. In such circumstances, we would be surprised to find authority for the proposition that the general contours of Texas law would not apply to the tort action.

---

1. Section 6 states:
   Choice–of–Law Principles
   (1) A court, subject to constitutional restrictions, will follow a statutory directive of its own state on choice of law.
   (2) When there is no such directive, the factors relevant to the choice of the applicable rule of law include
      (a) the needs of the interstate and international systems,
      (b) the relevant policies of the forum,

(c) the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue,
(d) the protection of justified expectations,
(e) the basic policies underlying the particular field of law,
(f) certainty, predictability and uniformity of result, and
(g) ease in the determination and application of the law to be applied.

*See Benson;* Restatement Second § 175 (local law of state where injury occurred ordinarily governs parties' rights and liabilities in action for wrongful death); Restatement First § 391 ("The law of the place of wrong governs the right of action for death.")

(23) Nevertheless, that does not mean that every issue in the wrongful-death action should be decided under Texas law. In particular, the distribution of proceeds to beneficiaries need not be governed by the same law as the law imposing liability on the Tortfeasor. The state where the injury occurred does not necessarily have an interest in who shares in the proceeds of the judgment or the relative size of those shares.

(24) On the other hand, it makes sense to start with the presumption that the distribution of proceeds should be in accordance with the law of the state whose law determines how much the tortfeasor should pay. First, the presumption provides administrative convenience. Rather than starting from scratch in selecting what law governs the distribution of proceeds, the parties and the court can assume that the issue has already been decided by the selection of the law governing how much should be paid. *See* 3 Stuart M. Speiser et al., *Recovery for Wrongful Death and Injury* § 13:25 (3d ed. 1992) ("It is the general rule—certainly in the older decisions—that damages recovered for wrongful death, whether by action, settlement or compromise, are to be distributed, apportioned or disposed of in accordance with the law of the state under whose death statute the right to recovery accrued, which most often was the law of the place of the wrong causing death.") (Speiser); C.P. Jhong, Annotation, *What Law Governs The Distribution, Apportionment, or Disposition of Damages Recovered for Wrongful Death,* 92 A.L.R.2d 1129, 1131 (1963) (similar); *cf.* Restatement Second § 177 ("The law selected by application of the rule of § 175 [which determines the local law governing the rights and liabilities of the parties in an action for wrongful death] determines how the recovery in an action for wrongful death shall be distributed.").

(25) Second, the law governing the amount of the award is often inextricably linked to the law governing distribution of the award.

Applying the law of one state in determining the total award and the law of another state in determining the distributive shares may lead to peculiar, if not absurd, results. For example, the amount of the award in Texas is determined by the sum of the losses to the statutory beneficiaries. Does it make sense for the award to include the loss to the Decedent's Mother (a Texas statutory beneficiary) and then exclude her from participating in the proceeds because the proceeds are distributed in accordance with the law of a state which does not include her as a statutory beneficiary? Or what if the award is determined under the law of a state, such as New Mexico, which does not require that any statutory beneficiary have suffered a loss from the death, but the award is to be distributed under the law of a state which divides the proceeds only among those statutory beneficiaries who have suffered such a loss? *See In re Estate of Barnes,* 133 Ill. App.3d 361, 88 Ill.Dec. 438, 478 N.E.2d 1046, 1050 (1985) ("[I]t would be illogical to apportion the proceeds of this Michigan wrongful death recovery under our own law and based upon economic dependence on the deceased where the settlement obtained reflects the Michigan law of damages which is heavily weighted toward loss of society and destruction of family relationships, not pecuniary loss."); *In re Estate of Bruck,* 632 N.E.2d 745, 748–49 (Ind.Ct.App.1994) (applying Ohio law regarding distribution because Indiana's statute "does not contemplate the damages awarded in the present case"); *see Calhoun v. Blakely,* 152 Vt. 113, 564 A.2d 590, 593 (1989) ("[B]ecause the measure of damages and the method of distribution would be inconsistent ..., it would not be rational to determine damages ... under New Hampshire law, and then distribute those damages ... under Vermont law.").

(26) Therefore, we will apply Texas law governing the apportionment of proceeds unless there are compelling reasons to apply the law of another state. Perhaps the difference between the laws of Texas and New Mexico with respect to distribution of proceeds is so slight that there would never be a compelling reason to apply New Mexico law regarding distribution when the amount of

the proceeds would be governed by Texas law. *See Shope v. State Farm Ins. Co.,* 122 N.M. 398, 400–01, 925 P.2d 515, 517–18 (1996) (apply law of place where contract executed unless a countervailing "fundamental" interest). But we need not reach that issue. We will assume that the difference between the Texas and New Mexico apportionment provisions is a matter of important public policy. The task then becomes to decide whether there is a compelling reason why New Mexico's policy should prevail over that of Texas.

(27) To begin that task, we ask which states would care about how the proceeds are apportioned. The answer seems apparent. The states that have an interest in where the proceeds go are the states where the potential beneficiaries are domiciled. (The state of the decedent's domicile may also have some interest, *cf.* Restatement Second § 260 (intestate succession to movables), but that interest would appear to be slight.) Judicial opinions that have considered which state has the greatest interest in distribution of wrongful-death proceeds have focused on the domiciles of the beneficiaries, or the beneficiaries and decedent. *See, e.g., Anderson v. SAM Airlines,* 939 F.Supp. 167, 173–75 (E.D.N.Y. 1996) (applying New York choice-of-law rules; considering domicile of beneficiaries and decedent); *Soares v. McClosky,* 466 F.Supp. 703, 709 (E.D.Pa.1979) (applying Pennsylvania choice-of-law rules; considering domicile of beneficiaries and decedent); *Satchwill v. Vollrath Co.,* 293 F.Supp. 533, 535 (E.D.Wis.1968) (applying Wisconsin choice-of-law rules; considering domicile of beneficiaries); Speiser § 13:25, at 75 & n. 72; *see also* Restatement Second § 177 cmt. b ("In a situation where one state is the state of domicile of the decedent and the beneficiaries, or of the defendant and the beneficiaries, it would seem that, ordinarily at least, the wrongful death statute of this state should be applied to determine how the recovery in a wrongful death action should be distributed."); *cf. Reich v. Purcell,* 67 Cal.2d 551, 63 Cal.Rptr. 31, 432 P.2d 727, 731 (1967) (rejecting law of Missouri, where accident occurred, with respect to damage limitations; "the interest of a state in a wrongful death action insofar as plaintiffs are concerned is in determining the distribution of proceeds to

the beneficiaries and that interest extends only to local decedents and beneficiaries").

(28) Certainly, New Mexico and Washington have an interest here. New Mexico is the residence of Diane, who would be a statutory beneficiary under the laws of New Mexico, Texas, Washington, and Idaho; New Mexico was also the residence of the Decedent. Washington is the residence of the Children, who are also statutory beneficiaries under the laws of all four states. In addition, Idaho has an interest because it is the residence of Decedent's Mother, who is a statutory beneficiary under the laws of Texas and Idaho.

(29) As previously noted, the statutory schemes for distribution are very similar in Idaho, Texas, and Washington, as distinguished from the scheme in New Mexico. In our three sister states there is no statutory formula for allocating the proceeds of the wrongful-death claim. Rather, the allocation is in accordance with a general principle of "justice," which apparently depends on the extent of loss, if any, to the particular statutory beneficiary. Thus, Texas-like law is the preferred law of the domiciliary states of three of the four potential beneficiaries—the two Children and Decedent's Mother. For choice-of-law purposes, these three states should be considered as one. *See* Restatement Second § 145 cmt. I ("When certain contacts involving a tort are located in two or more states with identical local law rules on the issue in question, the case will be treated for choice-of-law purposes as if these contacts were grouped in a single state."). In this circumstance, the presumption in favor of the law of the place of the wrong—Texas—is not overcome by the residence of Diane (or of Decedent) in New Mexico. Accordingly, we hold that Texas law should apply to the distribution of the proceeds of the wrongful-death claim.

(30) We are not unaware of an irony in the above analysis. Diane apparently would expect to obtain a larger share of the proceeds by applying the law of Texas (which we have grouped with the laws of Washington and Idaho) than by applying the law of her own domicile, whereas the Children apparently

believe that they would fare better under New Mexico law than under the law of their domicile. Hence, although we have assumed that a state has an interest in applying its law to determine what its residents will receive from the proceeds, apparently application of the law of the resident's home state in this case is likely to reduce the amount received by the resident. Nevertheless, in assessing a state's interest in the application of the law, we cannot assume that the state is result-oriented. We presume that a state is not interested in the most favorable result for its residents, but only that each state wants the "just" result for its residents, with justness measured by the laws of that state. Moreover, in this case we could hardly say that Washington would want us to apply the law of New Mexico on behalf of the Washington residents without also saying that New Mexico would want us to apply the law of Texas to assist the New Mexico resident.

## III.  CONCLUSION

(31) We reverse the judgment of the district court and remand with instructions to apply the law of Texas in distributing the proceeds from the wrongful-death claim.

(32) **IT IS SO ORDERED.**

ALARID and APODACA, JJ., concur.