784 P.2d 986

**STATE FARM MUTUAL INSURANCE COMPANY, Plaintiff–Appellee,**

v.

**Dewey CONYERS and Kay Conyers, his wife, Defendants–Appellants.**

No. 17600.

Supreme Court of New Mexico.

Nov. 29, 1989.

Duhigg, Cronin & Spring, Frank L. Spring and David M. Berlin, and Bruce P. Moore, Albuquerque, for defendants-appellants.

Foy, Foy & Jollensten, Celia Foy Castillo, Silver City, for plaintiff-appellee.

## OPINION

BACA, Justice.

Dewey and Kay Conyers appeal from a district court order granting State Farm Mutual Insurance Company (State Farm) summary judgment, holding that the substantive law of New Mexico should apply in determining the amount of policy proceeds State Farm owed the Conyers and that State Farm did not owe the Conyers any further payments under its policy. The main issue of whether the court erred in granting State Farm summary judgment can be divided into three sub-issues: (1) whether the Conyers had sufficient minimum contacts with New Mexico for the court to properly exercise personal jurisdic-

tion over them under NMSA 1978, Section 38-1-16(A)(1) (Repl.Pamp.1987) of the New Mexico long-arm statute; (2) whether minimum contacts existed to satisfy due process; and (3) whether New Mexico should change its approach to contractual choice of law rules. We affirm.

In August 1982, Kay Conyers purchased automobile insurance in Silver City, New Mexico, from State Farm agent, Roy Lewis, covering the Conyers' Ford truck with $25,000 in underinsured motorist coverage. In June 1984, Kay Conyers purchased additional automobile insurance from Roy Lewis in Silver City covering the Conyers' Jeep with $25,000 in underinsured motorist coverage. On each insurance application, Kay Conyers gave a Silver City mailing address and listed her husband's and her New Mexico driver's license numbers. The Ford truck had a New Mexico license plate until February 1987.

Dewey Conyers was a union ironworker who was assigned jobs with different companies at various job sites in and out of New Mexico. The Conyers, by affidavit, state that they resided in Silver City from May 1981 to April 1982, and from August 1982 to January 1983. The Conyers lived in Silver City between jobs. From January 1983 until December 26, 1984, the Conyers lived in California. After December 26, 1984, the Conyers moved to Tonopah, Nevada. On March 28, 1985, Dewey Conyers, a passenger in an automobile driven by Jerry Jordan (Jordan), was injured in an automobile accident in Nevada. Allstate Insurance Company (Allstate), the liability insurance carrier for Jordan, paid Dewey Conyers $25,000, the policy liability limits. State Farm paid Dewey Conyers underinsured motorist benefits of $25,000 under the policy covering the Jeep but failed to tender an additional $25,000 under the other policy. Conyers claimed his medical expenses exceeded $25,000 and demanded the entire $50,000 in underinsured motorist benefits available under both policies from State Farm.

Subsequently, State Farm brought a declaratory judgment action in the New Mexico district court, seeking a determination that it owed no further payments to Dewey Conyers because it could offset against its underinsured motorist coverage limits the amount of $25,000 liability coverage Allstate previously paid. The Conyers entered a special appearance before the court contesting the court's jurisdiction over them and filed a motion to dismiss the declaratory judgment for lack of personal jurisdiction, improper venue, forum non conveniens, and failure to state a claim upon which relief can be granted. On July 29, 1987, the court denied the motion. On May 8, 1987, the Conyers moved for partial summary judgment contending that Nevada law should apply to determine the distribution of the underinsured motorist proceeds. On May 29, 1987, State Farm moved for summary judgment, which the court granted.

## PERSONAL JURISDICTION

We first consider whether the court had personal jurisdiction over the Conyers in New Mexico under Section 38-1-16, our long-arm statute. The long-arm statute sets out five different types of acts, which if conducted in the State of New Mexico, submit the actor to the jurisdiction of the courts of this state if any cause of action should arise from such acts. These include the transaction of any business, the operation of a motor vehicle, the commission of a tort, the contracting to insure, and residence within the state for divorce actions if one spouse continues to live in New Mexico.

We use a three-step test to decide whether personal jurisdiction exists over nonresident, out-of-state defendants: (1) the defendant's act must be one of the five enumerated in the long-arm statute; (2) the plaintiff's cause of action must arise from the act; and (3) minimum contacts sufficient to satisfy due process must be established by the defendant's act. *Salas v. Homestake Enterprises, Inc.*, 106 N.M. 344, 345, 742 P.2d 1049, 1050 (1987). State Farm did not specify which of the five acts enumerated in the long-arm statute it relied on to assert personal jurisdiction over the Conyers. State Farm did allege in its complaint that it issued an insurance policy to the Conyers

in Silver City, New Mexico. By purchasing insurance in New Mexico, the Conyers transacted business in this state. On appeal, the Conyers do not assert that another section of the long-arm statute is applicable.

The Conyers argue that State Farm failed to meet one element of the *Salas* in personam jurisdiction test set out above, by failing to show that its cause of action directly arose from the defendant's transaction of business in the State of New Mexico. In *Winward v. Holly Creek Mills, Inc.*, 83 N.M. 469, 472, 493 P.2d 954, 957 (1972), we stated that a close relationship must exist between the act committed by the defendant and the plaintiff's claim. " '[T]he statutory phrase "arising from" requires only that the plaintiff's claim be one which lies in the wake of the commercial activities by which the defendant submitted to the jurisdiction of the [forum's] courts.' " (Quoting *Koplin v. Thomas Haab Botts*, 73 Ill.App.2d 242, 253, 219 N.E.2d 646, 651 (1966).) The Conyers maintain State Farm's cause of action is not related to the purchase and sale of insurance; rather they claim the accident in Nevada forms the prerequisite of State Farm's liability. The Conyers misconstrue the "arising from" element of the personal jurisdiction test by an inappropriate contrast between the accident and State Farm's claim. The correct determination should be whether State Farm's cause of action arose from business activities performed in New Mexico by the defendants. The Conyers submitted themselves to the jurisdiction of New Mexico courts by conducting business in New Mexico. They cannot now escape jurisdiction by claiming that the accident itself occurred outside the state boundaries. State Farm's cause of action for declaratory judgment to determine the extent of insurance coverage is closely related to the transaction of business between State Farm and the Conyers—the negotiation and purchase of insurance in New Mexico. Indeed, if the Conyers had not purchased insurance in New Mexico, no cause of action would exist. This transaction of business in New Mexico between State Farm and the Conyers creates sufficient minimum contacts with New Mexico for the court to exercise personal jurisdiction over the Conyers.

MINIMUM CONTACTS—DUE PROCESS

The Conyers also assert that the court erred in finding that they had sufficient minimum contacts with New Mexico to satisfy due process constraints. Precedent exists in New Mexico which establishes that the "transaction of any business" element of the long-arm statute is sufficient to fulfill the due process standard of minimum contacts. This is true only if the cause of action arises from the particular transaction of business, and the minimum contacts were purposefully initiated by the defendant. *Customwood Mfg., Inc. v. Downey Constr. Co.*, 102 N.M. 56, 691 P.2d 57 (1984). For a forum to assert personal jurisdiction over defendants, due process requires that defendants "have certain minimum contacts with [the forum state] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.' " *International Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945) (quoting *Milliken v. Meyer*, 311 U.S. 457, 463, 61 S.Ct. 339, 342, 85 L.Ed. 278 (1940)). To judge minimum contacts, "a court properly focuses on the relationship among 'the defendant, the forum, and the litigation.' " *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 775, 104 S.Ct. 1473, 1478, 79 L.Ed.2d 790 (1984) (quoting *Shaffer v. Heitner*, 433 U.S. 186, 204, 97 S.Ct. 2569, 2579, 53 L.Ed.2d 683 (1977)).

The key focus in analyzing minimum contacts is that the defendant by some act "purposefully avails [him]self of the privilege of conducting activities within the forum State, thus invoking the benefits ... of its laws." *Hanson v. Denckla*, 357 U.S. 235, 253, 78 S.Ct. 1228, 1239, 2 L.Ed.2d 1283 (1958). "[W]here the defendant 'deliberately' has engaged in significant activities within a state, *Keeton v. Hustler Magazine, Inc.*, [465 U.S.] at 781 [104 S.Ct. at 1481], or has created 'continuing obligations' between himself and residents of the forum, *Traveler's Health Ass'n v. Virginia*, 339 U.S. [643, 648, 70 S.Ct. 927, 930,

94 L.Ed. 1154 (1950)], he manifestly has availed himself of the privilege of conducting business there." *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 475–76, 105 S.Ct. 2174, 2183–84, 85 L.Ed.2d 528 (1985). We also review the nature of the transaction, the applicability of New Mexico law, the contemplation of the parties and the location of potential witnesses to determine if minimum contacts exist. *Kathrein v. Parkview Meadows, Inc.,* 102 N.M. 75, 76–77, 691 P.2d 462, 463–64 (1984). Finally, we observe that a single transaction of business within this state can subject a nonresident defendant to the jurisdiction of our courts, if the cause of action being sued upon arises from that particular transaction of business. *Customwood Mfg., Inc. v. Downey Constr. Co.,* 102 N.M. at 56, 691 P.2d at 57.

■ We note that the Conyers voluntarily initiated contacts with State Farm by purchasing automobile insurance in 1982 and 1984 in Silver City, New Mexico, before the Nevada accident. In 1985, Kay Conyers obtained insurance coverage again in the Silver City State Farm office on a Ford Bronco. In *McGee v. International Life Insurance Co.,* 355 U.S. 220, 78 S.Ct. 199, 2 L.Ed.2d 223 (1957), the issuance of a single reinsurance agreement in California was deemed a sufficient contact to permit California to exercise jurisdiction over a Texas defendant. The Conyers' activities in New Mexico manifest a purposeful intent to transact business in this state. By transacting business in New Mexico *several* times, the Conyers created continuing obligations between State Farm and themselves. The Conyers did not choose another state to purchase their insurance. When the Conyers chose New Mexico in which to transact business, they reasonably could contemplate that New Mexico law would apply. State Farm's agent and employees, potential witnesses, are located in Silver

City. We hold that the Conyers' conduct and connection with New Mexico was "such that [they could] reasonably anticipate being haled into court [in New Mexico]." *World–Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 297, 100 S.Ct. 559, 567, 62 L.Ed.2d 490 (1980). This court is satisfied that the exercise of personal jurisdiction over the Conyers comports with notions of substantial justice and fair play. Thus, the Conyers had sufficient minimum contacts with New Mexico to satisfy due process.

## CHOICE OF LAW

■ The Conyers urge us to adopt the contractual choice of law rules found in Restatement (Second) of Conflict of Laws and hold Nevada, not New Mexico law applicable.[1] Section 193 provides:

> The validity of a contract of fire, surety or casualty insurance and the rights created thereby are determined by the local law of the state which the parties understood was to be the principal location of the insured risk during the term of the policy, unless with respect to the particular issue, some other state has a more significant relationship under the principles stated in § 6 to the transaction and the parties, in which event the local law of the other state will be applied.

Restatement (Second) of Conflict of Laws, § 193 (1971). Under New Mexico law underinsured motorist protection can be stacked, *Konnick v. Farmers Insurance Co. of Arizona,* 103 N.M. 112, 703 P.2d 889 (1985), and underinsured motorist benefits can be offset by the tortfeasor's liability coverage. *Schmick v. State Farm Auto. Ins. Co.,* 103 N.M. 216, 223, 704 P.2d 1092, 1099 (1985). Here, Allstate has paid $25,000 to the Conyers in liability coverage. Under New Mexico law, State Farm is liable for $50,000 under the underinsured poli-

1. Alternatively, the Conyers urge adoption of the often-called "lex loci solutionis" rule from the first Restatement to the effect that the law of the place of performance of the contract governs issues regarding performances and/or breach of the contract. Even if this rule applied, it is far from clear where performance of the contract in this case would take place. The

record is unclear where demand for payment was made and, even if made in Nevada, there is no showing that payment would be made there. For the reasons stated in the text, we are satisfied that New Mexico law should control in this case, even if there were any indication that performance of the promises in the State Farm policies was to occur in Nevada.

cies by stacking but is entitled to a $25,000 offset. Thus, State Farm, having paid $25,000 to the Conyers, owes them no further payments. In contrast, under Nevada law, a liability insurance carrier cannot offset the benefits it owes by the amount received from the tortfeasor's carrier so the Conyers could recover an additional $25,000 in benefits from State Farm. *Mid-Century Ins. Co. v. Daniel*, 101 Nev. 433, 705 P.2d 156 (1985). Conyers asserts that we should reconsider or modify the *Schmick* decision; we decline to do so.

The Conyers maintain the lex loci contractus rule is mechanically applied and does not provide predictability or uniformity. The Restatement's significant relationship test is neither less confusing nor more certain that the lex loci contractus approach. *See General Tel. Co. of the Southwest v. Trimm*, 252 Ga. 95, 311 S.E.2d 460 (1984), *see also Smith, Choice of Law in the United States*, 38 Hastings L.J. 1041 (1987) (jurisdictions use various choice of law approaches rather than applying the Restatement (Second) approach exclusively). New Mexico courts have not necessarily mechanically applied the lex loci contractus rule. *See Miller v. Mut. Benefit Health & Accident Ass'n*, 76 N.M. 455, 415 P.2d 841 (1966); *Ratzlaff v. Seven Bar Flying Serv., Inc.*, 98 N.M. 159, 646 P.2d 586 (Ct.App.), *cert. denied*, 98 N.M. 336, 648 P.2d 794 (1982); *Eichel v. Goode, Inc.*, 101 N.M. 246, 680 P.2d 627 (Ct.App. 1984). In any event, in this case it is not necessary for us either to reaffirm a lex loci contractus rule categorically or to adopt or reject for all cases the Restatement (Second) "significant relationship" tests. Even were we to apply a Restatement (Second) analysis, New Mexico law

would still govern the outcome of this particular dispute.

Under Section 193 of Restatement (Second), the rights created by a contract of casualty insurance are determined by the law of the state which the parties understood was to be the principal location of the insured risk, unless some other state has a more significant relationship to the transaction and the parties under Section 6. As pointed out more fully below, there was no material fact presented to the district court on summary judgment as to any state other than New Mexico being the principal location of either vehicle during the term of the policies in question. As for the principles set out in Section 6,[2] we do not believe that any of the factors listed in subsection (2) militates particularly strongly in favor of applying Nevada law. Although we may presume that Nevada's policy is to apply its rule in cases like the present, we doubt that its interest in determining the particular issue in this case is very strong. On the other hand, New Mexico has a statutorily enunciated policy of applying an offset to the underinsured motorist coverage proceeds, as we held in *Schmick*. Uniformity of result points strongly in the direction of applying New Mexico law; different results for two insureds, one of whom lived in New Mexico and bought the policy here but who happened to be injured in Nevada, and another for the Conyers—both insureds having their rights adjudicated in the courts of New Mexico—would seem to be an anomolous outcome. The policy of New Mexico's law governing a contract of insurance applied for and issued in this state (and presumably conforming to this state's laws and insurance regulations), on a vehicle at least assumed to be located here and owned by an individual

---

**2.** Choice-of-Law Principles

(1) A court, subject to constitutional restrictions, will follow a statutory directive of its own state on choice of law.

(2) When there is no such directive, the factors relevant to the choice of the applicable rule of law include

  (a) the needs of the interstate and international systems,

  (b) the relevant policies of the forum,

  (c) the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue,

  (d) the protection of justified expectations,

  (e) the basic policies underlying the particular field of law,

  (f) certainty, predictability and uniformity of result, and

  (g) ease in the determination and application of the law to be applied.

Restatement (Second) of Conflict of Laws, § 6 (1971) (emphasis theirs).

who declared his residence as being here, seems to us to weigh more heavily than any possibly countervailing policy that would underlie applicability of Nevada law.

Here, Kay Conyers applied for insurance coverage for herself and her husband in Silver City, New Mexico, in 1982, and in 1984 on a Ford truck carrying a New Mexico license plate. Sufficient facts indicate that Kay Conyers signed the insurance contracts in Silver City, New Mexico. Thus, New Mexico was the principal location of the insured risk, at least as disclosed in the application to State Farm. The Conyers concede that Dewey Conyers purchased insurance while he was a New Mexico resident. The record does not reveal that the Conyers ever informed Roy Lewis of their move to Nevada. State Farm issued insurance believing the Conyers resided in New Mexico and had no reason to change this belief. An affidavit by a State Farm employee stated that Kay Conyers never told them that her permanent address had changed to a Nevada address even when she applied for insurance coverage personally in 1985 in the Silver City office. We hold the court properly applied New Mexico law to determine whether State Farm could offset the liability coverage Allstate previously paid. The court properly concluded State Farm did not owe any further payments to the Conyers under the *Schmick* analysis.

The Conyers also contend that, even if the lex loci contractus rule applies, the court could not properly determine that New Mexico law controls without the two insurance policies before it for review. The Conyers argue the trial court could not determine that the last act necessary to make the policy effective occurred in New Mexico. When interpreting a contract under the lex loci contractus rule, courts look to the law of the place where the contract was consummated, *Pound v. Insurance Co. of North America*, 439 F.2d 1059 (10th Cir.1971), unless this construction conflicts with the settled public policy of New Mexico. *Sandoval v. Valdez*, 91 N.M. 705, 580 P.2d 131 (Ct.App.1978). A contract is consummated where the last act necessary for its formation was performed. *Pound*, 439

F.2d at 1062. In *Brashar v. Mobil Oil Corp.*, 626 F.Supp. 434, 436 (D.N.M.1984), the court held that the last act necessary for an agreement's formation is accomplished when a party to a contract places the last signature on the contract. A contract is made at the place where the last signature is affixed. *Id.*

We have already observed that the Conyers conceded that Dewey Conyers purchased automobile insurance from State Farm when he was a New Mexico resident, that the Conyers purchased insurance in Silver City, New Mexico, and that sufficient facts indicate that Kay Conyers signed the applications in Silver City. Thus, the last act necessary to make insurance effective occurred in New Mexico. The applications in pertinent part also provided: "It is understood and agreed that no insurance is effective hereunder (a) *unless* the binder is completed designating the company accepting this application and signed by an authorized agent of such company, *or* (b) until the date of the policy or binder issued by the company accepting this application." Coverage on the Ford truck began on August 16, 1982, and coverage on the Jeep began on June 25, 1984, under part (a) of the applications; the contracts became fully effective on those dates. Moreover, the binders were completed designating State Farm as the accepting company and were signed by Roy Lewis, State Farm's authorized agent in New Mexico. The court could apply New Mexico law without the insurance policies because it could decide where the contract was made.

Finally, the Conyers assert that even if this court correctly found the existence of personal jurisdiction over the Conyers and applied New Mexico law, an issue of material fact remains regarding the residency of Dewey Conyers, thereby precluding the grant of summary judgment for State Farm. However, as noted above, the residency of Dewey Conyers is not a material fact in this case; even if he is or was a resident of Nevada, New Mexico law should still control for the reasons stated earlier in this opinion. The Conyers' con-

tention is meritless. We conclude that the court properly granted State Farm summary judgment. For the foregoing reasons, the decision of the trial court is affirmed.

IT IS SO ORDERED.

SOSA, C.J., and MONTGOMERY, J., concur.