987 P.2d 768

**Charles BECKLER and Linda Beckler, husband and wife; Matthew Beckler, a single person, Plaintiffs–Appellees,**

v.

**STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, an Illinois corporation, Defendant–Appellant.**

**No. 1 CA–CV 97–0364.**

Court of Appeals of Arizona, Division 1, Department A.

April 22, 1999.

Review Denied Oct. 26, 1999.

Jones, Skelton & Hochuli by Ronald W. Collett, David C. Lewis, Phoenix, Attorneys for Defendant–Appellant.

Bruce A. Giles, Esq., Phoenix, Attorney for Plaintiffs–Appellees.

## OPINION

PATTERSON, Presiding Judge.

¶ 1 State Farm Mutual Automobile Insurance Company (State Farm) and its insureds (the Becklers) filed cross-motions for summary judgment regarding whether Nebraska or Arizona law applied to stacking of uninsured motorist coverage. The parties stipulated that Arizona law would permit stacking while Nebraska law would not. The trial court ruled that Arizona law applied and State Farm appealed.

## FACTS

¶ 2 Plaintiffs Charles and Linda Beckler purchased automobile insurance on multiple vehicles from State Farm. Each vehicle was covered by a separate insurance policy. At issue is the insurance policy covering a 1984 Jeep Cherokee. Although the Becklers lived in Nebraska and purchased the insurance policy in Nebraska, their son, Matthew, brought the Jeep with him to Arizona where he attended college. Charles and Linda Beckler were the named insureds and by the terms of the policy Matthew was an "additional insured" covered by the policy. The Becklers' State Farm agent understood that Matthew and the Jeep would be in Arizona during the school year.

¶ 3 In April 1995, Matthew was walking through a parking lot in Phoenix, Arizona, when he was struck and severely injured by an uninsured Arizona motorist. State Farm paid Matthew $25,000 pursuant to the Becklers' uninsured motorist coverage on another vehicle.[1] Thereafter, Matthew sought an additional payment of $25,000 pursuant to the uninsured motorist coverage on the Jeep.

¶ 4 The insurance policy on the Jeep did not contain a choice of law provision. The parties stipulated that stacking would be allowed if Arizona law applied but not if Nebraska law applied. In cross-motions for summary judgment, the Becklers asserted that Arizona law should apply. State Farm countered that Nebraska law should apply. The trial court granted summary judgment for the Becklers and State Farm appeals.

¶ 5 We have jurisdiction pursuant to Arizona Revised Statutes Annotated (A.R.S.) sections 12–120.21 and 12–2101(B).

## DISCUSSION

### A. Standard of Review

¶ 6 The trial court may grant summary judgment when no material dispute exists and the movant is entitled to judgment as a matter of law. *Orme Sch. v. Reeves,* 166 Ariz. 301, 309, 802 P.2d 1000, 1008 (1990).

The parties do not dispute the facts; therefore, our review is a *de novo* review of the trial court's application of the law. *Gonzalez v. Satrustegui,* 178 Ariz. 92, 97, 870 P.2d 1188, 1193 (App.1993); *Bill Alexander Ford, Lincoln Mercury, Inc. v. Casa Ford, Inc.,* 187 Ariz. 616, 618, 931 P.2d 1126, 1128 (App. 1996) (choice of law is reviewed *de novo* ).

### B. The Parties' Stipulation

¶ 7 State Farm first asks us to relieve it of the parties' stipulation concerning Nebraska and Arizona law, alleging that State Farm made a mistake of law. State Farm asserts that, when entering into the stipulation, it mistakenly relied on *State Farm Mutual Automobile Insurance Co. v. Lindsey,* 182 Ariz. 329, 897 P.2d 631 (1995). In *Lindsey,* the Arizona Supreme Court addressed a specific State Farm clause, referred to as the "other vehicle" clause, and stated that the clause was not sufficiently specific to prevent stacking of insurance policies under Arizona law. *Id.* at 331, 897 P.2d at 633. However, State Farm asserts that a recent Division Two case changed the law with respect to stacking in this case. *See Farmers Ins. Co. v. Voss,* 188 Ariz. 297, 935 P.2d 875 (App.1996). In *Voss,* the court reviewed a policy clause that provided that the total amount payable under all policies could not exceed limits provided by a single policy with the highest liability limits. *Id.* at 298, 935 P.2d at 876. The *Voss* court held this clause was sufficient to prevent stacking under Arizona law. *Id.* The Jeep policy contained a provision similar to the one reviewed in the *Voss* case.

¶ 8 We do not relieve State Farm of the stipulation for several reasons. First, we do not agree with its characterization of this as a mistake of law. Second, the *Voss* decision was issued several months before State Farm filed its motion for summary judgment, yet State Farm did not present the *Voss* decision or seek relief from the stipulation from the trial court. Third, the State Farm policy does not contain language identical to that reviewed in *Voss;* thus, it is not conclu-

---

1. The policy limits of $25,000/$50,000 applied to all of the Becklers' policies with uninsured mo- torist coverage.

sive that the interpretation would be the same. Finally, State Farm could have asserted, at any time, that language in its policy prevented stacking whether or not the *Voss* decision existed. We decline to review these issues because an appellate court does not address issues presented for the first time on appeal. *MacCollum v. Perkinson,* 185 Ariz. 179, 189, 913 P.2d 1097, 1107 (App. 1996).

### C. Choice of Law

¶ 9 State Farm argues that Division Two's decision in *Government Employees Insurance Co. v. Fenton,* 164 Ariz. 440, 793 P.2d 1107 (App.1989), is controlling. In *Fenton,* Division Two held that Arizona's underinsured motorist statute had no applicability to a policy issued in Texas, to a Texas resident, covering a vehicle registered and principally garaged in Texas. *Id.* at 442, 793 P.2d 1107, 793 P.2d at 1109. State Farm further argues that even if *Fenton* is not controlling, Nebraska law should apply under the Restatement (Second) of Conflict of Laws § 193 (1971) (Restatement). The Becklers argue that, under both *Fenton* and the Restatement § 193, Arizona law should apply because the parties understood Arizona to be the principal location of the insured risk.

### 1. *Fenton*

¶ 10 State Farm alleges that the trial court erred when it determined that Arizona law applied, arguing that *Fenton* is controlling authority. The Becklers argue that *Fenton* is persuasive, but it supports their position, not State Farm's.

¶ 11 In *Fenton,* the plaintiff and her husband were involved in an auto accident in Tucson, Arizona. 164 Ariz. at 440, 793 P.2d at 1107. They were in a car owned by plaintiff, but not insured by defendant. *Id.* at 440–41, 793 P.2d at 1107–08. Plaintiff settled her claim against the driver of the other vehicle. *Id.* at 441, 793 P.2d at 1108. She then sought additional coverage under her underinsured motorist coverage on the uninvolved car which remained in Texas. *Id.*

The insurance company denied coverage arguing that under Texas law, the underinsured motorist coverage is "reduced by the amount recovered or recoverable from the insurer of the underinsured motor vehicle." *Id.* (quoting Tex. Ins.Code Ann. art. 5.06–1(5)). Thus, under Texas law, plaintiff was not entitled to coverage because she "recovered more than her underinsured policy limits from the driver of the other vehicle." *Id.* Plaintiff argued that Arizona law should apply and that Arizona law does not permit this type of offset. *Id.* She further argued that the vehicle involved in the accident was principally garaged in Arizona, since she had moved to Arizona the day before. Although plaintiff's move was a disputed fact, the court presumed the claim true for purposes of review. *Id.*

¶ 12 The *Fenton* court held that Texas law applied because Arizona's under/uninsured motorist statute limits application of the statute to policies "delivered or issued" in Arizona for vehicles registered or "principally garaged" in Arizona. *Id.* Further, the *Fenton* court found that Texas law should apply because the policy was issued for a vehicle that was registered in Texas and principally garaged in Texas. *Id.* The language limiting applicability to policies issued or delivered in Arizona has since been deleted from the statute. *See* A.R.S. § 20–259.01 (1995). Therefore, we find *Fenton* distinguishable.[2] Instead, we apply Restatement § 193.

### 2. Restatement § 193

¶ 13 In the absence of a choice of law provision, we apply our own choice of law rules to determine which law to apply to substantive issues such as stacking of insurance. *See Cardon v. Cotton Lane Holdings, Inc.,* 173 Ariz. 203, 206, 841 P.2d 198, 201 (1992) (issue relating to deficiency of the judgment was substantive and, therefore, determined by Arizona's choice of law). *See also Frost v. Liberty Mut. Ins. Co.,* 828 S.W.2d 915, 920 (1992) (stacking of uninsured motorist coverage is a substantive issue).

---

2. At oral argument, counsel for State Farm conceded that the revised version of A.R.S. section 20–259.01 could apply to this matter because the renewal of the Jeep policy came after the deletion of the language in A.R.S. section 20–259.01.

The Jeep policy contains no express provision for the governing law; therefore, Arizona's choice of law rules apply.

¶ 14 The dissent argues that we have ignored the choice of law issues raised and the settled law, while making quantum leaps to apparently achieve result-oriented determinations. While relying upon *Rhody v. State Farm Mutual Insurance Co.*, 771 F.2d 1416 (10th Cir.1985), the dissent overlooks the distinction between our matter and *Rhody*. *See* op. at ¶ 42.

¶ 15 In *Rhody*, an Oklahoma statute required the use of Texas' anti-stacking provision because the insurance policy contained no choice of law provision. The court found that the Oklahoma statute restricts application of choice of law principles, stating: "Absent any such specific manifestation of intent to be bound by the laws of a particular jurisdiction, the law of the place where the contract was made governs interpretation of the contract." 771 F.2d at 1420. We have no similar statutory provision in Arizona restricting our choice of law rules.

■ ¶ 16 Arizona follows the Restatement for its choice of law. *Cardon*, 173 Ariz. at 207, 841 P.2d at 202. We start with a review of § 193:

> Contracts of Fire, Surety or Casualty Insurance
>
> The validity of a contract of fire, surety or casualty insurance and the rights created thereby are determined by the local law of the state which the parties understood was to be *the principal location of the insured risk during the term of the policy*, unless with respect to the particular issue, some other state has a more significant relationship under the principles stated in § 6 to the transaction and the parties, in which event the local law of the other state will be applied.

Restatement § 193 (emphasis added).

■ ¶ 17 The Becklers assert that Arizona law applies because Arizona was the "principal location" of the Jeep, the "insured risk."[3] Further, they assert that all parties to the agreement understood that Arizona would be the principal location of the insured risk.

¶ 18 State Farm counters that even if we apply § 193, Nebraska law applies because of the "more significant relationship" exception. State Farm argues that Nebraska is where the insurance policy was sold and issued, where the parties live, and where the Becklers' State Farm agent does business. Therefore, considering all contacts, Nebraska has the "more significant relationship."

¶ 19 State Farm further argues that virtually all of the cases applying § 193 have applied the law of the state where the policy was issued and where the named insureds resided. However, State Farm fails to point out that, in those cases, the principal location of the insured risk was generally the same as where the policy was issued or where the insureds primarily resided. *See, e.g., Walker v. State Farm Mut. Auto. Ins. Co.*, 973 F.2d 634, 636–37 (8th Cir.1992) (insureds residents of, car garaged at, and policy issued in Kansas); *Boardman v. United Servs. Auto. Ass'n*, 470 So.2d 1024, 1033 (Miss.1985) (insureds residents of, car garaged at, and policy issued in Nebraska); *State Farm Mut. Ins. Co. v. Conyers*, 109 N.M. 243, 784 P.2d 986, 990 (1989) (car garaged at and policy issued in New Mexico); *McAllaster v. Bruton*, 655 F.Supp. 1371, 1373 (D.Me.1987) (policy issued and vehicle garaged in Connecticut); *Hartzler v. American Family Mut. Ins. Co.*, 881 S.W.2d 653, 654 (Mo.Ct.App. 1994) (insureds residents of, car garaged at, and policy issued in Kansas); *Adkins v. Sperry*, 190 W.Va. 120, 437 S.E.2d 284, 285, 288 (1993) (Ohio insurance application, insureds residents of, and car registered, licensed, and garaged in Ohio). Thus, those cases are distinguishable.

¶ 20 The dissent insists that Restatement § 193 has been misinterpreted and misapplied here by the majority. The dissent cites *See Shapiro v. Associated Int'l Ins. Co.*, 899 F.2d 1116, 1120 (11th Cir.1990) (holding that when multiple risk policy covered insureds in numerous locations, "location of the risk has less significance") (quoting Restatement § 193 cmt. b).

---

3. The Becklers or State Farm could have chosen to insure all of the vehicles under one multiple risk policy but did not. Therefore, the "insured risk" was not the aggregate of the vehicles but the specific vehicle insured by the policy at issue.

*Boardman* for the proposition that "the mere location of an insured vehicle or of an insured does not determine what law applies." Op. at ¶ 43. However, the court in *Boardman* never reached the issue presented here because it determined that the issue of coverage was preliminary to any issue of location of risk. 470 So.2d at 1033–34 (the court stated, however, that absent the superseding coverage issue, there is force to the argument that Mississippi law should apply under § 193). Thus, it concluded that Nebraska law should determine whether the insured's son was in fact covered under the policy. *Id.* at 1034.

¶ 21 We are not presented with a coverage issue here. We are presented with a pure choice of law issue. The parties stipulated that if Arizona law applies, stacking is permitted, whereas if Nebraska law applies, stacking is not permitted. Thus, *Boardman* is inapposite to the case at hand.

¶ 22 The dissent also cites *Walker*, in which the court applied Kansas law to residents of Kansas who were involved in an accident in Iowa. Op. at n.12. The court in *Walker* applied the more significant relationship test and, on State Farm's urging, also applied the principal location of the risk test. 973 F.2d at 636. The court stated it was "persuaded by the facts that the Walkers were residents of Kansas and dealt with a Kansas agent to purchase insurance for their vehicles *garaged in Kansas.*" *Id.* at 637 (emphasis added). However, *Walker* is factually distinguishable. The analysis used by the *Walker* court is consistent with Restatement § 193, which we apply to the matter at hand.

¶ 23 We found no authority on point, Arizona or otherwise; therefore, we reviewed the language of § 193 and the comments thereto.

a. **Principal Location of the Insured Risk**

 ¶ 24 Comment b to § 193 provides that the principal location of the insured risk

is "in the state where it will be during at least the major portion of the insurance period." *See also McAllaster,* 655 F.Supp. at 1373 (location of insured risk under auto policy is where the automobile will be principally garaged). The "insured risk" is the automobile covered under the policy.[4] *See* Restatement § 193 cmt. b (insured risk is "the object or activity which is the subject matter of the insurance"); *McAllaster,* 655 F.Supp. at 1373; *Conyers,* 784 P.2d at 990; *Walker,* 973 F.2d at 636; *Adkins,* 437 S.E.2d at 288. The policy does not require the insured vehicle to be involved in the accident for uninsured motorist coverage to be activated. The coverage can be initiated by a named or other insured. We recognize that in this particular instance the Jeep was not involved. However, without the existence of the automobile policy, the uninsured motorist coverage would not exist. The Restatement provides that the automobile is the insured risk in an automobile insurance policy. Thus, we must look to the principal location of the automobile, not Matthew.

¶ 25 Here, Arizona was the principal location of the insured risk. The parties understood that Matthew would be attending school in Arizona at least nine months out of the year and that the Jeep would be with him during those months. Therefore, Arizona is the place that the parties understood to be the principal location of the insured risk.

¶ 26 The general rule set forth in § 193 is to be given great weight in determining choice of law issues. The comments state: "[T]he risk's principal location is the most important contact to be considered in the choice of the applicable law." Restatement § 193 cmt. b. Also, the comments provide: "The location of the insured risk will be given greater weight than any other single contact. . . ." *Id.* Comment c discusses the rationale for placing greater weight on the location of the risk: "[t]his location has an

4. The dissent states that the location of the vehicle is virtually irrelevant because "[t]he UM coverage purchased by Matthew's parents did not depend on his use of the Jeep Cherokee, as UM coverage protects a person" anywhere. Op. at ¶ 40. However, coverage of Matthew necessitates coverage of the "insured risk," which is the Jeep. Therefore, without the Jeep, or some other "insured risk," Matthew would not have UM coverage at all. Thus, the location of the "insured risk" is extremely relevant here.

intimate bearing upon the risk's nature and extent and is a factor upon which the terms and conditions of the policy will frequently depend." Further, "the location of the risk is a matter of intense concern to the parties . . . and the state where the insured risk will be principally located during the term of the policy has a natural interest in the determination of issues arising under the insurance contract." Restatement § 193 cmt. c.

¶ 27 Our review of the parties' understanding supports our conclusion that Arizona was the principal location of the insured risk. Comment d to § 193 provides:

> [A]pplication of the local law of the other state would hardly be unfair to the insurance company, at least with respect to some issues, if the company had reason to foresee when it issued the policy that there might be a shift to another state of the principal location of the risk.

Further, comment b provides: "[I]n the case of an automobile liability policy, the parties will usually know beforehand where the automobile will be garaged at least during most of the period in question." Finally, other courts have emphasized the fact that the insurance company did not know the principal location of the insured risk had changed. *See, e.g., Conyers,* 784 P.2d at 991 ("The record does not reveal that the Conyers ever informed [their agent] of their move to Nevada."); *Baybutt·Constr. Corp. v. Commercial Union Ins. Co.,* 455 A.2d 914, 919 (Me.1983) ("the rule merely reflects the implied intent of the parties to the contract"). Here, the parties do not dispute that State Farm knew the Jeep would be garaged in Arizona for most of the year.

■ ¶ 28 State Farm argues that it understood Nebraska to be the location of the risk because the Becklers were paying lower premiums on the Jeep policy. State Farm asserts that the Becklers were paying "rock-bottom" insurance rates based on the underwriting criteria of Nebraska. It asserts that

underwriting is important and is mentioned in comment c of § 193. However, the Restatement does not suggest that underwriting criteria is a factor to be weighed separately but only advises that it is one of the justifications for the weight placed on the location of the risk. Restatement § 193 cmt. c. The Restatement suggests that the insurer will set the premium based on the rates of the location where the automobile is kept. State Farm asserts that it allowed the insured to enjoy the lower Nebraska rates. However, State Farm had the option to set the policy premium based on Arizona underwriting standards and failed to do so.[5] Further, it presented no evidence as to the underwriting standards or premium rates of State Farm in Arizona or Nebraska and as such we consider that argument to be waived. *Smith v. Rabb,* 95 Ariz. 49, 54, 386 P.2d 649, 652 (1963). Therefore, we conclude that the parties understood Arizona to be the principal location of the insured risk.

### b. Section 6 factors

¶ 29 Our analysis does not end with determining that the parties understood Arizona to be the principal location of the insured risk. Section 193 requires us to determine that Nebraska does not have a more "significant relationship" to the parties and the transaction. In determining whether Nebraska has a more significant relationship to this transaction, we review the factors outlined in § 6 of the Restatement. These factors are:

(a) the needs of the interstate and international systems,

(b) the relevant policies of the forum,

(c) the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue,

(d) the protection of justified expectations,

(e) the basic policies underlying the particular field of law,

---

5. Clause six of the "Conditions" section of the Jeep policy pertains to "Change of Residence" and provides:

 When we receive notice that the location of principal garaging of the vehicle ... has been changed, we have the right to recalculate the premium based on the coverages and rates applicable in the new location. When the change of location is from one state to another ... we shall replace this policy with the policy form currently in use in the new state of garaging.

(f) certainty, predictability and uniformity of result, and

(g) ease in the determination and application of the law to be applied.

Restatement § 6.

■■■ ¶ 30 The significant relationship test is qualitative rather than quantitative. *See Bates v. Superior Ct.,* 156 Ariz. 46, 49, 749 P.2d 1367, 1370 (1988) (applying significant relationship test under Restatement § 145). Thus, merely listing the number of contacts with each state is insufficient.[6] In applying the § 6 factors to this case, we find that Nebraska does not have a more significant relationship.[7]

¶ 31 Comment d, which relates to the needs of the interstate systems, provides that a court "should seek to further harmonious relations between states and to facilitate commercial intercourse between them." Applying Arizona law will not hamper harmonious relations between Nebraska and Arizona. If State Farm wishes to assure application of Nebraska law to policies written in Nebraska, it can include a choice of law provision in its policies.

¶ 32 Under § 6 we must review the relevant policies in Arizona and Nebraska and the policy underlying each state's insurance laws. Restatement § 6(2). Arizona has a strong interest in applying Arizona law. Arizona's purpose for uninsured motorist legislation is to protect its citizens from uncompensated damages caused by financially irresponsible drivers. *Evenchik v. State Farm Ins. Co.,* 139 Ariz. 453, 458, 679 P.2d 99, 104 (App.1984). The public policy behind limiting the circumstances under which a policy can allow stacking is to reduce the cost of insurance to Arizona customers. Jeffrey B. Guldner, Note, *State Farm v. Lindsey: What Limits on Arizona's Anti–Stacking Statute?,* 27 Ariz. St. L.J. 265, 272 (1995). However, the legislature did not prohibit stacking completely. *Id.* at 268. The language of Arizona's anti-stacking statute is permissive and not mandatory; therefore, the anti-stacking provision must be included in the policy. *Lindsey,* 182 Ariz. at 331, 897 P.2d at 633. When it is not, stacking will be permitted. *Id.* at 332, 897 P.2d at 634.

¶ 33 Arizona law permits stacking in certain circumstances and Nebraska does not permit stacking at all. *Compare* A.R.S. § 20–259.01 *with* Neb.Rev.Stat. § 44–6410 (Supp.1996). We find that, taken as a whole,

---

**6.** We disagree with State Farm's argument that we must consider the contacts listed in Restatement § 188. Most cases that look to § 188 for guidance do so only after determining that no principal location of insured risk exists under § 193. *See, e.g., Hartzler,* 881 S.W.2d at 656; *American Fam. Life Assur. Co. v. United States Fire Co.,* 885 F.2d 826, 833 (11th Cir.1989); *Boardman,* 470 So.2d at 1034 ("This is a matter having little to do with the location of the risk."). *But see Smith v. Hughes Aircraft Co.,* 783 F.Supp. 1222, 1228 (D.Ariz.1991), 22 F.3d 1432, *aff'd in part, rev'd in part* (9th Cir.1993) (principal location of risk is uncontroverted). Other courts ignore the existence of a section specifically relating to insurance contracts (§ 193) and apply § 6 or § 188. *See, e.g., O'Rourke v. Colonial Ins. Co.,* 624 So.2d 84, 86 (Miss.1993); *Mountain Fuel Supply v. Reliance Ins. Co.,* 933 F.2d 882, 888 (10th Cir.1991).

**7.** The dissent states that "[t]oday's opinion authorizes stacking of coverages right in the face of Nebraska law that governs the offer and issuance of the coverages, notwithstanding our supreme court's clear indication in *Bryant v. Silverman,* 146 Ariz. 41, 703 P.2d 1190 (1985), that Arizona has little or no interest in compensation of non-resident plaintiffs." Op. at ¶ 39.

The principle above from *Bryant* is part of the overall analysis that the court used for determining the weight of particular factors to be considered in choice of law matters. *Id.* at 45, 703 P.2d at 1194. *See also* Restatement § 145(2). The factors include: (1) the state where the injury occurs, (2) the state where the conduct causing the injury occurs, (3) the domicil/residence of the parties, and (4) the state in which the relationship between the parties is centered. *Id.* at 44–45, 703 P.2d 1190. Restatement § 145(2) further states that "[t]hese contacts are to be evaluated according to their relative importance with respect to the particular issue."

*Bryant* involved a wrongful death suit arising out of an airplane crash. A thorough review of *Bryant* reveals that the foremost consideration for the court was determining which state had the more significant relationship to the matter under § 6 of the Restatement. Thus, the court in *Bryant* weighed each contact "in light of the issues and facts of this case," to determine which state had the more significant contacts, qualitatively. *Id.* at 44–45, 703 P.2d at 1193.

Here, unlike the dissent, we conclude that Arizona has the most significant relationship with this matter in light of the issues and facts of this case.

Arizona's law provides greater protection than does Nebraska law for victims of uninsured motorists be they residents or not.[8] Applying Arizona law will further Arizona's interest in providing greater recovery for Matthew. Arizona has a strong interest in having its law applied equally and for that purpose.[9] Nebraska's interest in prohibiting stacking does not outweigh Arizona's interest in compensating the victims of accidents occurring within Arizona's borders. Although most of the Becklers' insured vehicles were located in Nebraska, the only policy before us concerns the Jeep that was principally located in Arizona.

¶ 34 In addition, Arizona has an interest in providing recovery for those individuals who physically reside within its borders. Although Matthew may be domiciled in Nebraska, he resided in Arizona during the school year for three-fourths of the year. Thus, we find no reason not to provide Matthew with the same protection as any other person residing in Arizona.

¶ 35 Section 6 also requires that we protect the parties' justified expectations. Restatement § 6(2)(d). Here, the parties informed the agent where the Jeep was to be located. State Farm emphasizes the importance of Nebraska as the state where the Jeep policy was issued. Although Matthew was domiciled in Nebraska with his parents, the "named insureds," at the time of the accident Matthew resided primarily in Arizona and was the primary driver of the insured vehicle. Thus, if the parties anticipated that any claim would be made on the Jeep policy, they likely anticipated that it would originate in Arizona. Here, State Farm knew Matthew would be in Arizona a majority of the time with the Jeep. Thus, we find that the parties' justified expectations were that Arizona law would apply on the Jeep policy.

¶ 36 Finally, under § 6, we must look to the uniformity of the result and the ease in application. Restatement § 6(2)(f) and (g). Choice of law rules should be simple and easy to apply. Based on the interests involved, we find that Arizona's law should apply. This result provides for at least the same ease in application as would Nebraska's laws. Further, applying Arizona law is reasonable and results in uniformity.

¶ 37 Considering the weight given to the principal location of the risk, we find it appropriate to apply Arizona law. We do not find that Nebraska's concerns and interests are sufficient to invoke the § 193 exception cited by the dissent. For these reasons, we affirm.

¶ 38 State Farm requests its attorneys' fees and costs under A.R.S. sections 12–331, 341.01(A). State Farm is not the prevailing party on appeal; therefore, its request is denied. *Id.*

CONCURRING: MICHAEL D. RYAN, Judge.

THOMPSON, Judge, dissenting.

¶ 39 Matthew Beckler is a Nebraska resident injured while walking from a Phoenix night club. His injuries are covered under his parents' Nebraska automobile insurance only because he lives with his parents in Nebraska. The insurance at issue in this case, uninsured motorist coverage, was selected in Nebraska by Matthew's mother, Linda Beckler, on a form entitled "Nebraska Uninsured and Underinsured Motor Vehicle Coverages" which described Nebraska law regarding UM and UIM coverages. Nebraska law required State Farm to offer at least $25,000/$50,000 in UM coverage, but disallowed stacking of UM coverages on different vehicles and policies. Today's opinion autho-

8. Comment e of the Restatement suggests that frequently an insurance policy's choice of law provision is not given effect if it chooses the state that gives less protection to the insured than the otherwise applicable law. Restatement § 193 cmt. e. *See also Bryant*, 146 Ariz. at 46, 703 P.2d at 1195 (following Restatement, court analyzed which state had the dominant interest in wrongful death action and noted states' policies for fully compensating injured plaintiffs).

9. The parties have stipulated that, under Arizona law, stacking would be permitted. We have already concluded that we are bound by the stipulation. Arizona's law provides greater chance for recovery. It is this public policy to which we look regardless of whether, absent the stipulation, stacking would be permitted in this case under Arizona law.

rizes stacking of coverages right in the face of Nebraska law that governs the offer and issuance of the coverages, notwithstanding our supreme court's clear indication in *Bryant v. Silverman,* 146 Ariz. 41, 703 P.2d 1190 (1985), that Arizona has little or no interest in compensation of non-resident plaintiffs. "Compensation of an injured plaintiff is primarily a concern of the state in which plaintiff is domiciled." *Id.* at 45, 703 P.2d at 1194. The majority here imbues Matthew with the "not inconsiderable agility" of being at once a Nebraska resident and yet entitled to privileges afforded only to Arizonans. *See Boardman,* 470 So.2d at 1035 n. 6 (plaintiff could not be "at once both a Mississippian" and a Nebraska resident). Indeed the majority itself has demonstrated "not inconsiderable agility" in taking the supreme court's determination in *Bryant* to protect Arizona residents and turning it into a general rule that Arizona law will be applied where it best helps whatever plaintiff, non-residents included, happens to be in front of us. Majority Opinion at ¶ 31 (citing *Bryant* in support of proposition that we should apply Arizona's stacking cases because to do so "will further Arizona's interest in providing greater recovery for Matthew"). I dissent.

¶ 40 Apart from its stated intention to apply whatever law best helps the plaintiff,[10] the majority relies almost exclusively on what it determines to have been the site of "principal garaging" of the Jeep Cherokee. In my view, the location of the vehicle is virtually irrelevant to the issue before us. The Jeep Cherokee was not involved in this accident. When he was hit, Matthew was walking with some friends to a girl's vehicle in the parking lot, at which point the party planned to travel in the girl's vehicle to eat at Denny's. The UM coverage purchased by Matthew's parents did not depend on his use of the Jeep Cherokee, as UM coverage protects a person "driving an automobile, strolling down the sidewalk, or relaxing in the front porch swing," "no matter where he is ... or what he is doing." *Employers Mut. Cas. Co. v. McKeon,* 159 Ariz. 111, 114, 765 P.2d 513, 516 (1988). Matthew was insured against uninsured motorists whether he drove the Jeep to Arizona or whether the Jeep even existed.

¶ 41 Concluding that there are no cases on point, the majority ignores a large body of law applying the law of the state where the policies were issued and the insureds resided on the purported basis that in the cases cited by State Farm "the principal location of the insured risk was generally the same as where the policy was issued or where the insureds primarily resided." Majority Opinion at ¶ 17. There are several problems with this conclusion.

¶ 42 First, one of the three cases cited by State Farm as controlling, *Rhody v. State Farm Mut. Ins. Co.,* 771 F.2d 1416 (10th Cir.1985), applied Texas law, which made no provision for stacking of UM coverage, to a Texas policy issued to Texas residents whose son was fatally injured in a car wreck in Oklahoma, where the son resided and kept his car. In *Rhody,* State Farm knew that the son was an Oklahoma resident, and that his car would be garaged at his Oklahoma residence. *Id.* at 1417. The Oklahoma legislature had adopted a statute specifically authorizing stacking. *See id.* at 1421. The Tenth Circuit held that applying Texas law and disallowing stacking of coverages was not "inimical to established public policy in Oklahoma," notwithstanding Oklahoma's legislative approval of stacking, because Oklahoma courts do not generally apply laws protecting resident insureds to foreign contracts containing different provisions. *Id.*[11] Quite contrary to the Tenth Circuit's conclusion in *Rhody,* and our supreme court's decision in *Bryant* that it is not our task to see that non-residents get the full measure of compensation available to Arizona residents,

---

10. Matthew has already been paid policy limits by State Farm under the UM coverage on one of his parents' policies, and he has sued the bar that apparently served liquor to the drunk driver that hit him.

11. *Bryant* similarly restricts our choice of law determination here by abjuring any interest in the compensation of non-domiciliary plaintiffs. *Bryant,* 146 Ariz. at 45, 703 P.2d at 1194. Thus, contrary to the majority's assertion (*see* Majority Opinion at ¶¶ 14–15), Arizona's choice of law precepts do not materially differ from those deemed operative in *Rhody.*

the majority here asserts that Arizona has a strong interest in applying its own law regarding stacking to a non-resident whose home state would not afford him the same privilege. If in *Rhody* Oklahoma's positive legislative authorization of stacking was not sufficiently "prescriptive" to indicate a public policy in favor of stacking, then even less so does Arizona's legislative authorization to insurance companies to preclude stacking suggest a policy imperative to allow stacking.

¶ 43 Second, the majority dismisses another[12] of State Farm's key cases, *Boardman*, 470 So.2d 1024, as one involving a vehicle principally garaged in Nebraska, where the policy was issued and the insured resided. What the majority fails to note is that the UM coverage of the injured insured (a son of a named insured) in *Boardman* was determined by the law of Nebraska, notwithstanding that the son was in Mississippi during the entire policy term, attending college and then working a job. *Id.* at 1028, 1033. The son had driven an insured vehicle into Mississippi, and the vehicle was then taken to Ohio by the father. *See id.* at 1028. Mississippi's contacts with the insurance contract, occasioned by the son's college attendance and employment in Mississippi, were deemed merely "fortuitous." *See id.* at 1032. Thus, *Boardman* stands for the proposition that the mere location of an insured vehicle or of an insured does not determine what law applies.

¶ 44 Third, the *Restatement (Second) of Conflict of Laws* section upon which the majority relies, § 193, has an important exception that undermines exclusive reliance on the principal location of the insured risk. The law of the state where the risk was located will not apply where, "with respect to the particular issue, some other state has a more significant relationship ... to the transaction and the parties, in which event the local law of the other state will be applied." *Restatement* § 193. A comment to

§ 193 posits application of the exception "when the contract would be invalid under the local law of another state with a close relation to the transaction and the parties." *Id.* at cmt. d (1971). This is the case here, where stacking is precluded by the law of the State of Nebraska, a state with clearly close relations to the insurance contract, its resident insureds, and the accident itself. Compensation for Matthew is primarily Nebraska's concern, particularly since Matthew resides with his parents in Nebraska. *See Bryant*, 146 Ariz. 41, 703 P.2d 1190. Nebraska's anti-stacking provision is part of the insurance contract from which Matthew seeks to benefit and cannot be read out of the contract because of the fortuity of Matthew's temporary presence in Arizona. Each state has the right to regulate and control contracts that its residents enter into, and state laws are a part of its residents' contractual agreements. *See American Fed. of Labor v. American Sash & Door Co.*, 67 Ariz. 20, 29, 39, 189 P.2d 912, 918, 925 (1948). Arizona has no warrant to alter the settled understanding of the law of Nebraska, pursuant to which this UM coverage was offered by a Nebraska company, purchased by a Nebraska resident, and afforded to a member of the same Nebraska household temporarily located in Arizona, when the Nebraska law and the Nebraska contract prohibit stacking.

¶ 45 I would reverse.

---

12. As to the third of the three cases State Farm principally relies upon, *Walker*, 973 F.2d 634, which applied Kansas law where the insureds resided in Kansas but were involved in an accident in Iowa, appellees declined to even address the *Walker* holding other than to assert that State Farm should be estopped from citing it.