**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**DEC 30 2003**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

AFA TUATO; NIA TUATO,
individually, and as parents, next
friends, and personal representatives
of the Estate of Neval Abe Tuato;
KENRICK AMITUANAI, JR., an
adult child of the deceased Kenrick
Amituanai; CAROLINE LE'ELE,
individually, next friend, and personal
representative of and as Guardian Ad
Litem of Tuiaana ("Tre") Le'ele, III,
the minor child of the deceased
Tuiaana "Scott" Le'ele,

     Plaintiffs,

     and

LUPE AMITUANAI, individually,
next friend, and personal
representative of and as Guardian Ad
Litem of Maau Lene Amituanai, a
minor child of the deceased Kenrick
Amituanai,

     Plaintiff-Appellant,

v.

WILLIAM R. BROWN; YELLOW
FREIGHT SYSTEM, INC., a
corporation; DOES 1-10, inclusive,

     Defendants-Appellees.

No. 02-2007 & 02-2021
(D.C. No. CV-00-269-KBM)
(New Mexico)

# ORDER AND JUDGMENT[*]

Before **SEYMOUR**, **HENRY** and **McCONNELL,** Circuit Judges.

Mr. Neval Ape Tuato, Mr. Tuiaana "Scott" Le'ele, and Mr. Kenrick Amituanai were killed in a traffic collision. Their representatives[1] brought a wrongful death suit against the driver of the other vehicle involved in the collision and now appeal a variety of the district court's pretrial rulings against them. For the reasons articulated below, we reverse and remand for retrial.

Decedents were traveling in a pickup truck on an interstate highway in Utah when the driver of the pickup lost control of the vehicle and it skidded across the median into oncoming traffic. A semi-truck and trailer collided with the pickup and all three people in the pickup died. Plaintiffs conceded the contributory negligence of the pickup driver throughout the proceedings, but it was unclear which of the decedents was driving.

Plaintiffs raise a number of issues on appeal but we need address only two: whether the district court properly applied Utah law and whether the court failed

---

[*] This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

[1] Plaintiffs/Appellants are the surviving family members, representatives of the estates, or guardians ad litem to the surviving children of Mr. Tuato, Mr. Le'ele and Mr. Amituani.

to adequately perform its gatekeeping function under *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993). The remaining issues might not arise in a new trial.

First, Plaintiffs contend the district court erred in applying Utah law rather than the law of New Mexico. In support of their argument, Plaintiffs rely heavily on *State Farm Mut. Ins. Co. v. Conyers*, 784 P.2d 986 (N.M. 1989). *Conyers*, however, is inapposite to a determination of choice-of-law questions in tort because it analyzed choice-of-law in the context of an insurance contract. Plaintiffs' supplemental authority, *State Farm Mutual Automobile Insurance Co. v. Ballard*, 54 P.3d 537 (N.M. 2002), is similarly unavailing. In *Ballard*, the New Mexico Supreme Court declined to apply *lex loci contractus* in interpreting a step-down provision in an automobile liability insurance policy because the provision was offensive to New Mexico public policy. *Id.* at 542. The court did recognize, however, that New Mexico law applied to the tort liability in the case because the accident occurred in New Mexico, and "[t]he rights and liabilities of persons injured in automobile accidents are determined under the laws of the state where the accident happened." *Id.* at 539 (quoting *State Farm Auto. Ins. Co. v. Ovitz*, 873 P.2d 979, 981 (N.M. 1994)).

*Ballard* thus confirms the strong presumption that New Mexico courts apply *lex loci* in tort cases. *See Torres v. State*, 894 P.2d 386, 390 (N.M. 1995)

-3-

(holding New Mexico courts generally apply tort law of state where wrong occurred unless doing so would violate public policy); *Estate of Gilmore v. Gilmore*, 946 P.2d 1130, 1135-36 (N.M. Ct. App. 1997) (finding strong presumption in favor of applying *lex loci* in tort cases); *Purple Onion Foods, Inc. v. Blue Moose of Boulder, Inc.*, 45 F. Supp. 2d 1255, 1262 (D.N.M. 1999) (noting New Mexico generally follows *lex loci* doctrine in tort cases).

The New Mexico Supreme Court has acknowledged the presumption of *lex loci* in tort is "not utilized, however, if such an application would violate New Mexico public policy." *Torres*, 894 P.2d at 390. Plaintiffs have failed to overcome this strong presumption because they offer no compelling policy considerations that would persuade a New Mexico court to apply New Mexico law rather than Utah law in a case where the decedents were residents of California and the accident occurred in Utah. The only legally significant connection the state of New Mexico has to this case is that it was the domicile of the semi-truck driver. We see no reason why New Mexico has a compelling policy interest in providing a specific theory of recovery (comparative rather than contributory negligence) to California plaintiffs who suffered injury in Utah.[2]

---

[2] Plaintiffs filed a motion requesting that we certify to the New Mexico Supreme Court the question of whether a New Mexico court would use Utah law under the *lex loci* doctrine or would apply New Mexico law. *See* N.M. R. App. P. 12-607 ("The Supreme Court may answer by formal written opinion questions of

(continued...)

-4-

The second issue we address concerns the testimony by an expert witness for the defense, Mr. Brian Charles. Under *Daubert* and *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137 (1999), the district court must perform a gatekeeping function to ensure expert testimony offered under Federal Rule of Evidence 702 is "not only relevant, but reliable." *Daubert*, 509 U.S. at 589. The purpose of *Daubert* gatekeeping is "to undertake whatever inquiry is necessary to 'make certain that an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field.'" *Smith v. Ingersoll-Rand Co.*, 214 F.3d 1235, 1243 (10th Cir. 2000) (quoting *Kumho Tire*, 526 U.S. at 152).

We recently articulated the standard of review we apply to *Daubert* gatekeeping cases. *See Dodge v. Cotter Corp.*, 328 F.3d 1212, 1223 (10th Cir.), *cert. denied*, 124 S. Ct. 533 (2003). We review *de novo* whether the district court used the appropriate legal test when admitting expert testimony. *Goebel v. Denver & Rio Grande W. R.R. Co.*, 215 F.3d 1083, 1087 (10th Cir. 2000)

---

[2](...continued)
law certified to it by a court of the United States . . . if the answer may be determinative of an issue in pending litigation in the certifying court and the question is one for which answer is not provided by a controlling . . . appellate opinion of the New Mexico Supreme Court . . . ."). Because controlling opinions of the New Mexico Supreme Court provide the choice-of-the-law rules for this case, we deny the motion to certify.

("*Goebel I*") (remanding to district court, in part, for specific findings that court performed initial *Daubert* gatekeeping function), *aff'd on other grounds on reh'g, Goebel v. Denver & Rio Grande W. R.R. Co.*, 346 F.3d 987 (10th Cir. 2003) (affirming district court's findings regarding substantive reliability of expert's conclusions without addressing court's gatekeeping function).  Although the district court has discretion in how it conducts the gatekeeper function, it may not abrogate its gatekeeping function altogether.  *See id.* (citing *Kumho Tire*, 526 U.S. at 158-59 (Scalia, J., concurring)).  If the district court applied the proper standard and acted as a gatekeeper at the outset of its inquiry, we then review for abuse of discretion whether the court applied the standard correctly in determining the admissibility of the testimony.  *General Elec. Co. v. Joiner*, 522 U.S. 136, 138-39 (1997).

We conclude the district court failed to perform its gatekeeping function properly because it conducted an insufficient *Daubert* hearing and failed to make findings necessary for our review of the *Daubert* issue raised by plaintiffs.  To demonstrate the reliability and admissibility of Mr. Charles' testimony on accident reconstruction and biomechanics, the defense offered Mr. Charles' *curriculum vitae* and two expert reports he had previously written.[3]  Mr. Charles

---

[3] Biomechanics is "the study of the action of external and internal forces on the living body, especially on the skeletal system."  Random House Unabridged

(continued...)

was not present at the hearing, and no testimony appears in the record.

At the *Daubert* hearing, plaintiffs objected to Mr. Charles' qualifications and proposed testimony with regard to biomechanics. Rec., vol. II at 65-78.[4] As plaintiffs pointed out to the district court, Mr. Charles admitted he was not a biomechanics expert and the words "occupant dynamics" do not appear anywhere on his *curriculum vitae*. Tr. Trans. at 133-34.

The court overruled plaintiffs' objections because it found they were disputing the credibility of Mr. Charles' accident report and the weight of the evidence, matters which do not bear on the initial admissibility of the expert's

---

[3](...continued)
Dictionary 210 (2d ed. 1993). Biomechanics is distinct from accident reconstruction, which Mr. Charles defined as "a combination of science and art that relates to determining how a collision occurred and then looking at the factors leading up to the collision, in terms of occupant and vehicle behavior preceding the crash." Tr. Trans. at 51. We have allowed accident reconstruction experts to testify to facts from which they claim to be able to give an accurate picture of the sequence of events immediately preceding an accident. *See Brandt v. French*, 638 F.2d 209, 211 (10th Cir. 1981). These facts include: "vehicle mass; direction of skid marks; dimensions of vehicles involved; dents, breaks and paint transfers of vehicles; road surface textures; and physics principles of mechanics such as inertia, velocity, coefficients of friction, and operating characteristics of vehicles." *Id.*

[4] At the *Daubert* hearing, plaintiffs expressed that they had no objection to Mr. Charles' qualifications with respect to accident reconstruction. Rec., vol. II at 65-68. At trial, however, plaintiffs did object to Mr. Charles being recognized as an expert on accident reconstruction. Tr. Trans. at 65-66. For purposes of this appeal, the inconsistency is irrelevant because even if the court received no objection at the *Daubert* hearing regarding accident reconstruction, it nevertheless erred by failing to conduct a sufficient gatekeeping hearing regarding biomechanics.

testimony under *Daubert*. The court ruled Mr. Charles had sufficient information, knowledge and experience to testify as an expert in accident reconstruction *and* biomechanics. Mr. Charles was thus permitted to offer "expert" opinions on the identity of the driver and on the lateral movement inside the car.

In *Dodge*, we explained that the district court must make detailed findings on the record to fulfill its gatekeeping responsibility under *Daubert*:

> A natural requirement of the gatekeeper function is the creation of a sufficiently developed record in order to allow a determination of whether the district court properly applied the relevant law. In [*United States v. Velarde*, 214 F.3d 1204, 1209 (10th Cir. 2000)], we observed that *Kumho* and *Daubert* make it clear that the [district] court must, on the record, make *some* kind of reliability determination. Thus, we held in [*Goebel I*] that when faced with a party's objection, a district court must adequately demonstrate by *specific findings on the record* that it has performed its duty as gatekeeper. Without specific findings or discussion on the record, it is impossible on appeal to determine whether the district court carefully and meticulously reviewed the proffered scientific evidence or simply made an off-the-cuff decision to admit the expert testimony. In the absence of such findings, we must conclude that the court abused its discretion in admitting such testimony.

*Dodge*, 328 F.3d at 1223 (citations and quotations omitted) (first and second emphases in original). In this case, as in *Dodge*, "the court did not make adequate findings on the record to assure that the expert testimony offered was both relevant and reliable, and that the particular opinions were based on valid reasoning and reliable methodology." *Id.* at 1225-26.

Based on the record before us, we conclude the district court failed to conduct a sufficient *Daubert* hearing. Rather than hear testimony and make

-8-

findings on the record regarding the disputed matters, the court simply accepted Mr. Charles as an expert and allowed him to testify. Because the court abrogated its *Daubert* gatekeeping duty, we reverse and remand for a new trial.

ENTERED FOR THE COURT

Stephanie K. Seymour
Circuit Judge